[No. 11665. In Bank. — December 16, 1887.]

CHARLES SÚTRO ET AL., RESPONDENTS, *v.* B. F. PETTIT, TREASURER OF SAN LUIS OBISPO COUNTY, APPELLANT.

MUNICIPAL BONDS — OVER - ISSUE — SAN LUIS OBISPO COUNTY — COURT-HOUSE BONDS — BONA FIDE PURCHASER. — Bonds of the county of San Luis Obispo, negotiable in form, and purporting to be issued under the act of April 4, 1870, as amended on March 14, 1874, — authorizing the county to issue bonds for the erection of a court-house, not exceeding in the aggregate the sum of forty thousand dollars, — are void, in so far as they exceed the amount limited by the act, even in the hands of a *bona fide* purchaser for value and before maturity. And refunding bonds subsequently issued by the county, in supposed accordance with subdivision 14 of section 25 of the county government act of 1883, in place of such over-issue, are also void.

ID. — SUPERVISORS CANNOT ISSUE BONDS. — The issuance of county bonds is not within the scope of the general and ordinary powers of a board of supervisors in this state, and such bonds can be legally issued only by virtue of express authority of the legislature.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*Jasper N. Turner,* and *J. R. Patton,* for Appellant.

The board of supervisors, having only the powers expressly conferred upon them or necessarily implied, had no power to issue the bonds in controversy. Such bonds, being an over-issue, are void. (*Foster* v. *Coleman,* 10 Cal. 278; *People* v. *Supervisors of El Dorado County,* 11 Cal. 170; *Robinson* v. *Supervisors of Sacramento County,* 16 Cal. 208; *County of San Joaquin* v. *Jones,* 18 Cal. 327; *Trinity County* v. *McCammon,* 25 Cal. 121; *El Dorado County* v. *Davidson,* 30 Cal. 520; *Linden* v. *Case,* 46 Cal. 171; *Wallace* v. *Mayor,* 29 Cal. 188; *Gould* v. *Sterling,* 23 N. Y. 463; *Town of South Ottawa* v. *Perkins,* 94 U. S. 261.) If the board did not have the power to issue the bonds, there could be no such thing as a *bona fide* holder of them, as any purchaser would be held to have notice

of the fact, where there was a total want of authority. (1 Dillon on Municipal Corporations, sec. 515, and the cases there cited; *Cromwell* v. *Sacramento,* 96 U. S. 51; *Bissell* v. *City of Kankakee,* 64 Ill. 249; 21 Am. Rep. 554; 2 Daniel on Negotiable Instruments, 2d ed., p. 515, sec. 1555.) The bonds themselves refer to the acts of the legislature under which they were issued, and it cannot be successfully claimed that the holders of said bonds, the plaintiffs here, did not have notice of the terms of the statute. (*McClure* v. *Township of Oxford,* 94 U. S. 432.)

*J. M. Wilcoxon,* for Respondents.

It was for the board of supervisors to determine what was an indebtedness of the county, at the time they concluded to refund the indebtedness in 1885, and they having ordered these bonds of Sutro & Co. refunded, their action became final as to the validity of the bonds. (County Government Act, sec. 25, subd. 14 (*a*); *Lynde* v. *County of Winnebago,* 16 Wall. 6; *Porter* v. *Haight,* 45 Cal. 631, 639; *Colusa County* v. *De Jarnett,* 55 Cal. 373; *Hills* v. *Peekskill Savings Bank,* 101 N. Y. 490.) Under the order of the board in refunding, read in connection with the law, the duty of the treasurer to pay as soon as the refunding bonds were sold and the money placed in the treasury became plain (County Government Act, sec. 25, subd. 14 (*b*) ), and could be enforced by *mandamus.* (*Meyer* v. *Porter,* 65 Cal. 67; *Meyer* v. *Brown,* 65 Cal. 583; *Hausmeister* v. *Porter,* 10 Saw. 280; High on Extraordinary Remedies, 2d ed., sec. 357.) And in this proceeding the treasurer could not question the validity of the bonds. (*Meyer* v. *Brown,* 65 Cal. 583, 590.) The bonds were not void. Power was given to issue them by the act, and there was nothing on the face of the instrument which showed it to be an over-issue, and no record was accessible showing the amount issued under the act. (2 Daniel on Negotiable Instruments,

2d ed., 493; *Com'rs Knox County* v. *Aspinwall,* 21 How. 545; *Mercer County* v. *Hackett,* 1 Wall. 83.) For a period of thirteen years the county has recognized these bonds as valid, and paid the interest thereon, and as late as 1885 the supervisors took measures to refund them. (*Nevada Bank* v. *Steinmitz,* 64 Cal. 301, 318; 2 Daniel on Negotiable Instruments, 2d ed., 502.) Even if the bonds, as such, were void, the supervisors could refund them as an indebtedness against the county, which they have done. (County Government Act, sec. 25, subd. 14 (*a*).)

McFARLAND, J.—This is an appeal from a judgment of the superior court of San Luis Obispo County, rendered on a writ of *mandamus,* commanding the appellant to pay to the respondents certain bonds alleged to have been issued by said county.

The legislature, by an act passed April 4, 1870, which was amended by an act passed March 14, 1872, authorized the board of supervisors of the county of San Luis Obispo to issue bonds of said county, "not exceeding in the aggregate the sum of forty thousand dollars," for the purpose of erecting a court-house. (Stats. 1869–70, p. 816; Stats. 1871–72, p. 369.) The act provides what interest the bonds should bear, and when they should be payable, and that they should be "of such denominations respectively as the board shall order." It is also provided that the clerk of the board should keep a register of the date and number of each bond issued, and the amount realized from the sale thereof, with the name of the purchaser. Two copies of said register were required to be made by the clerk, one to be kept in the office of the county auditor, and the other in the office of the county treasurer. The bonds were to be issued from time to time as the work on the court-house progressed.

The board determined that the bonds should be of the denomination of one hundred dollars, and accordingly four hundred bonds were issued and numbered con-

secutively from 1 to 400, which, of course, amounted to forty thousand dollars, the whole amount allowed by the act. But twenty additional bonds were issued, numbered from 401 to 420, which were over-issues, and entirely unauthorized by the act. These twenty last-named bonds were purchased by respondent for a valuable consideration before maturity, and in the ordinary course of business, and are the subject of this litigation. They were in form negotiable. Interest was paid on them for several years. On the first day of January, 1880, they were outstanding and unpaid.

Subdivision 14 of section 25 of the county government act (Stats. 1883, p. 305) provides that "the board of supervisors of any county having an outstanding *indebtedness*, on the first day of January, 1880, *evidenced by bonds or warrants thereof*," may fund or refund the same, or may pay them with the proceeds of the sale of new bonds issued for that purpose. In supposed accordance with this provision, the board of supervisors of San Luis Obispo County, on May 4, 1885, ordered that the whole of said four hundred and twenty court-house bonds, amounting to forty-two thousand dollars, together with ten thousand dollars of road-repair bonds, be redeemed and paid with the proceeds of the sale of fifty-two thousand dollars' worth of new bonds. The new bonds were issued and sold, realizing over fifty-two thousand dollars. The appellant (treasurer) paid all of said court-house bonds, numbered from 1 to 400, but refused to pay the said twenty bonds held by respondents, numbered from 401 to 420. And from the judgment of the superior court commanding him to pay them, the treasurer appeals.

There is a line of judicial decisions in cases where the validity of municipal bonds depended on the happening of some precedent contingency of fact, and the question was, whether the officers executing the bonds were vested with the discretion or power to determine if the contin-

gency had happened. For instance, when municipal officers have been authorized to issue bonds in aid of railroads, after a proposition to issue them shall have been adopted by the people at an election, the question has frequently arisen whether the officers had power to determine that such election had been properly held, and whether a recital of that fact on the face of the bonds was binding on the municipality. And on such questions the decisions of courts have not been uniform. (The subject will be found fully discussed and authorities cited and quoted in the last few pages of volume 1 of Dillon on Municipal Corporations.) But no such question arises in the case at bar. The validity of the bonds issued under the act of April 4, 1870, did not depend upon any fact—any matter *in pais*—to be determined by the supervisors. The power to issue the bonds, and the limitation of that power, depend wholly upon the language of the act itself, and not upon any extrinsic contingency. There was nothing left to the discretion of the officers, as in the case of *Porter* v. *Haight*, 45 Cal. 631, nor was there any authority to do what " might appear to them advantageous to the county," as in *Nevada Bank* v. *Steinmitz*, 64 Cal. 301.

Neither can the doctrine of estoppel, or of ratification, or of *bona fide* holding, be successfully invoked by respondents. Those doctrines can be invoked against municipal corporations—if at all—only in cases of informality, irregularity, etc., on the part of an authorized agent. (Dillon on Municipal Corporations, 3d ed., secs. 457, 463, 511–553, and cases cited.) " Where there is a total want of authority to issue municipal bonds, there can be no *bona fide* holding of them." (*Town of East Oakland* v. *Skinner*, 94 U. S. 255.) It is clear—in this state at least—that the issuance of bonds is not within the scope of the general and ordinary powers of a board of supervisors, and that such bonds can be legally issued only by virtue of express authority of the legislature.

(Dillon on Municipal Corporations, secs. 485, 507, and cases there cited; *Lindon* v. *Case*, 46 Cal. 172; *Wallace* v. *Mayor of San Jose*, 29 Cal. 181; *El Dorado County* v. *Davidson*, 30 Cal. 521; *Robinson* v. *Supervisors of Sacramento*, 16 Cal. 208; *Foster* v. *Coleman*, 10 Cal. 281; *People* v. *Supervisors of El Dorado County*, 11 Cal. 170.) The bonds in question, therefore, were issued without any authority at all, and are wholly void. And the action of the board of May 4, 1885, ordering these bonds to be redeemed, was, of course, of no value. The character of one void act of public officers cannot be changed by a. second void act of the same officers, declaring the first act to be valid.

It is quite probable that the respondents paid full par value for these bonds, and that they will lose their money. But "those who contract with a municipal corporation are bound to know the extent of the power of its officers." (*Wallace* v. *Mayor of San Jose*, *supra*.) Respondents would have discovered the worthlessness of the bonds upon the slightest inquiry. At all events, hard cases cannot be allowed to make bad law. An over-issue of twenty thousand dollars would have been no less valid than the over-issue of two thousand dollars; and any other rule would put the people of a county in the complete power of careless or unscrupulous public officers.

The judgment of the superior court is reversed, with direction to dismiss the proceeding.

THORNTON, J., McKINSTRY, J., TEMPLE, J., SEARLS,. C. J., and SHARPSTEIN, J., concurred.