## MUNICIPAL SECURITY CO. *v.* BAKER COUNTY.

[ 54 Pac. 174 ]

ESTOPPEL TO DENY EQUITABLE JURISDICTION.—An objection in an equity suit that plaintiff has an adequate remedy at law cannot be raised by a defendant who has by his own answer asked equitable relief: *Kitcherside* v. *Myers*, 10 Or. 21, and *O'Hara* v. *Parker*, 27 Or. 157, approved.

COUNTY INDEBTEDNESS—CONSTRUCTION OF CONSTITUTION.—The prohibition against counties contracting indebtedness above a specified amount, under Art. XI, § 10 of the constitution, applies only to such debts and liabilities as they may voluntarily incur or create, and not to those that are thrust upon them by operation of law and which they are powerless to prevent: *Grant County* v. *Lake County*, 17 Or. 453, and *Burnett* v. *Markley*, 23 Or. 436, approved.

COUNTIES—RULE FOR APPLYING LAW AGAINST DEBTS.—The taxpayers should have the benefit of the doubt and be protected by the constitutional prohibition against voluntary indebtedness, where it is not entirely certain that the obligation had to be incurred—in other words, there should be a clear warrant of law for every county expenditure or it will be a voluntary indebtedness.

Voluntary Debt—Shelving for Vault—Insurance.—A county is not by law obligated to provide shelving or boxing for the vaults where its records are kept, nor is it compelled to insure its property, and indebtedness incurred for either of these purposes is entirely voluntary.

Debt Limit—Bridges.—An indebtedness incurred by a county in constructing or repairing bridges is a voluntary obligation, within the prohibition against county indebtedness contained in the constitution, Art. XI, § 10, for Hill's Ann. Laws, § 4140 distinctly provides that county courts "may * * * in their discretion" expend public funds for bridges.

Expenses of County Buildings.—Under Hill's Ann. Laws, § 896, subd. 1, the expense of erecting or repairing necessary county buildings is not an obligation imposed on the county by operation of law.

Purchase of Toll Roads—Payment of Scalp Bounties.—It is not necessary to the performance of its corporate functions that a county shall buy toll roads or pay a bounty for scalps, and any indebtedness incurred for such purposes is purely voluntary.

Appropriation of Current Revenues to Voluntary Indebtedness.—Unappropriated current revenues of a county including those which are past due and uncollected cannot be anticipated by voluntary indebtedness of the county, especially where the county is otherwise largely indebted for ordinary current expenses: *Salem Water Co.* v. *City of Salem,* 5 Or. 29, cited and applied.

Expense of Poor Farm is Voluntary.—County warrants representing the purchase of a poor farm are within the prohibition of the Const., Art. XI, § 10, against counties voluntarily creating indebtedness beyond a specified amount.

Expenses of Reindexing and Replatting Records.—Under a statute that a certain officer should receive for certain work "such compensation as the county judge and county commissioner may deem sufficient" it is discretionary with the officials to order such work done or leave it undone, and the expense, if it is done, is wholly voluntary, under the inhibition of the constitution, article XI, § 10.

Warrants for More Than the Indebtedness.—County warrants are void where a percentage is added to the amount due in order to bring the warrants to a cash basis in the market.

Expert Examination of Books of Public Officers.—Warrants issued for posting up public records that are behind and for experting books of the county officers are necessary expenses of conducting a county imposed by law.

Payment of Unlawful Indebtedness Not an Estoppel—Agency.—The payment by the county authorities of warrants issued for unlawful claims, with full knowledge of that fact, does not estop taxpayers or the county from asserting the invalidity of other outstanding claims of the same nature, for no county agent or official could ratify an act that he could not have done originally.

Estoppel by Receiving Benefit.—The fact that a county has received benefits thereby does not preclude it from asserting the unlawfulness of warrants issued for voluntary obligations in excess of the constitutional limit.

Estoppel by Apportionment of Debt.—Where no question of the constitutionality of warrants representing a county indebtedness was determined by commissioners appointed to apportion indebtedness between two counties,

neither the counties nor their taxpayers are precluded from asserting the invalidity of such warrants as having been issued in excess of the constitutional limitation.

From Baker : ROBERT EAKIN, Judge.

Suit by the Municipal Security Company, of Portland, Maine, against Baker County, its judge, commissioners, treasurer, and five hundred of its taxpayers to relieve sundry warrants from the effect of the decree in a suit brought by the five hundred defendant taxpayers to enjoin the payment of these and a large number of other warrants. That suit was decided on a demurrer to the complaint, and the appeal was dismissed on a motion without any consideration of its merits : *Stuller* v. *Baker County*, 30 Or. 294 (47 Pac. 705). Not having been a party to that suit, though then owning some of the warrants that were being attacked, plaintiff now sues to have its warrants declared valid obligations,\* and appeals from a decree against it.

AFFIRMED.

For appellant there was a brief and an oral argument by *Messrs. Wm. Smith* and *Chas. A. Johns.*

For respondent county officers, there was a brief and an oral argument by *Mr. Hugh E. Courtney*, district attorney.

For respondent taxpayers, there was a brief and an oral argument by *Mr. Martin Luther Olmstead.*

MR. JUSTICE WOLVERTON delivered the opinion.

\*NOTE.—It was urged by the defendants in the present case that plaintiff was not in a position to maintain this suit, as it was not a taxpayer, or even a resident or citizen, and because there was available a plain, speedy and adequate remedy at law. Owing to the terms of the pleadings the point was not considered.— REPORTER.

This is a suit the avowed purpose of which is to relieve certain Baker County warrants, owned and held by the plaintiff, from the operation of a decree entered in a suit in which plaintiff was not a party, whereby the county treasurer was enjoined from paying and the sheriff from receiving them in payment of taxes, and to restore them to their original condition. The warrants involved consist of Nos. 3,043 to 3,047, inclusive, issued May 5, 1891, to George W. Borman, for $200 each; No. 2,810, issued March 6th, for $25, and No. 2,676, issued July 16th, for $59, to the same party; thirteen of those numbered from 3,812, to 3,837, class L, inclusive, one of which is for $50, and the remaining twelve for $100 each, issued to George M. Chambers, August 17, 1891; nineteen, ranging in numbers from 3,284 to 3,302, class L, inclusive, for $25 each, issued to C. H. Whitney, May 15, 1891; No. 3,543, class K, issued to G. D. Barnard & Co., July 13, 1891, for $542.90; and No. 3,646, class L, issued to James Ferguson, July 13, 1891, for $149.40. All these warrants were presented to the county treasurer soon after their issuance, and indorsed, "Not paid for want of funds." The warrants issued to Borman purport to be for indexing records; to Chambers, for purchase of poor farm; to Whitney, for work on county books; the one to Barnard & Co., for purchase of shelving for records; and the one to Ferguson, for insurance.

The defendants, among whom are included many taxpayers of the county, interposed several defenses, among which are ( 1 ) that the Borman and Whitney warrants were issued in fraud of the county, and without authority of law, for pretended services of the said Borman and Whitney, which were never authorized; and ( 2 ) that all the liabilities created by the issuance of such warrants were voluntarily assumed by the county; and that, at the date of their issue, the county was indebted

in about the sum of $200,000, of which more than $20,-
000 was voluntarily incurred, and not created for sup-
pressing insurrection or repelling invasion, by reason
whereof said warrants and the indebtedness imposed
thereby are unconstitutional and void. In connection
with these defenses, it is alleged that all such warrants
are outstanding and uncancelled, and are claimed by
plaintiff to be valid and subsisting demands against the
county, which said plaintiff is endeavoring to enforce,
and prays that they be cancelled as illegal and void, and
the plaintiff enjoined from further attempts to enforce
payment thereof.

The further and separate reply alleges : (1) That, at
the date of the issuance of such warrants, there were
taxes duly and regularly assessed and levied upon the
property subject to taxation in Baker County, and which
was then due and collectible to the amount of $50,000,
and which was thereafter collected in due course ; (2)
that much of the indebtedness which defendants claim
to have been voluntarily incurred and outstanding at the
time of the issuance of such warrants has since been paid
by the regularly constituted authorities of the county,
and has been recognized and treated as legal and valid,
and that, by reason thereof, the defendants ought not
now be heard to assert or allege the illegality of such as
have not been paid, because voluntarily incurred ; (3)
that the county and defendants have received full value
for all of such warrants, and retain and enjoy the use
and benefit of the labor and property in consideration for
which they were issued, and, therefore, that they should
now be estopped to assert their illegality ; and (4) that
the whole of such indebtedness was recognized by the
commission duly appointed to determine the just and
*pro rata* proportion of the existing debt of Baker County
which Malheur County should pay and assume, and that

defendants ought thereby to be estopped from asserting the illegality of any part of it.

A question was made at the argument, and is somewhat insisted upon in the brief, that a court of equity is without jurisdiction to entertain the cause of suit set forth by the complaint, because plaintiff has an adequate remedy at law; but the defendants have themselves, by their answer, sought and demanded equitable relief, which precludes them from raising the question : *Kitcherside* v. *Myers*, 10 Or. 21 ; *O'Hara* v. *Parker*, 27 Or. 156 (39 Pac. 1004).

Plaintiff insists that all the indebtedness of the county, represented by the warrants in controversy, and which it is seeking to restore to their original condition, is such as was thrust upon it by operation of law, and that it is entitled to have them paid in due course, as other outstanding warrants are redeemed by the county. The defendants assert the contrary, and claim, further, that at the time said warrants were issued and such indebtedness imposed upon the county, it was indebted upon demands voluntarily incurred in a sum largely in excess of the constitutional limitation of $5,000. While the latter proposition is not seriously disputed by the plaintiff, it contends that the cash assets of the county were then ample to meet all of such expenses, and hence that the indebtedness thus incurred does not come within the constitutional inhibition. These propositions include about all that is of vital importance touching the controversy. It was held by this court in *Grant County* v. *Lake County*, 17 Or. 453 (21 Pac. 447), that the constitutional inhibition touching indebtedness created by the counties of the state (Const. Art. 11, § 10) applies only to such debts and liabilities as they might voluntarily incur or create acting in their corporate characters and as artificial persons, and that such as are thrust upon

them by operation of law, and which they are powerless to prevent, as may be instanced the salaries of officers, the expenses of holding court, and the like, do not fall within the purview of its limitations. This construction was recognized in *Wormington* v. *Pierce*, 22 Or. 606 (30 Pac. 450), and still later approved in *Burnett* v. *Markley*, 23 Or. 436 (31 Pac. 1050); so that it may now be said to be settled law, and it simply remains for us to apply the organic law as thus interpreted to the facts of the case as disclosed by the testimony.

It is difficult to lay down a rule by which to discriminate clearly between debts voluntarily incurred and those imposed by law. The most important function of the county is to maintain a local government subordinate to, but as an arm of, the state. Now, the expense incident to and necessary under the laws prescribed by the state to organize and maintain such a government may be said to be thrust upon it by law, but such as the county court, acting in its capacity as fiscal agent of the county, has volition to contract, or such as may be wholly within its discretion to impose upon the county or not, as its judgment may dictate, is that against which the constitutional inhibition is directed. The undoubted purpose of this particular clause was to effectually protect persons residing within the county from the abuse of their credit and the consequent oppression of burdensome, if not ruinous, taxation ; and it ought to be clear that a county is powerless to prevent before it should be permitted to incur any indebtedness beyond the limits thereby imposed. We mean by this that if there is a doubt whether a debt has been cast upon the county by operation of law, or has been voluntarily created, those who have the burdens to bear consequent upon such determination should have the benefit of the doubt and the protection of the constitution. Officers intrusted with the manage-

ment of public affairs, involving the expenditure and disbursement of public revenues, should be able to find a clear warrant of law for every such expenditure or disbursement.

The court below found that at the time of the issuance of all the warrants involved in the controversy, except Nos. 2,676 and 2,810, there was indebtedness outstanding against Baker county aggregating $40,535, evidenced by warrants issued to the following named parties, viz. : May 11, 1885, J. E. Bacon, building bridge, $3,471; Nov. 25, 1885, Pauley Jail Building Company, jail and cells, $10,000; Nov. 19, 1885, to Jan. 8, 1887, A. A. Houston, building jail, courthouse, and clerk's office, $9,844; April 18, 1886, to March 16, 1891, to various persons, bounty on scalps wild animals, $860; July 20, 1888, J. S. Bingham, premium on insurance, $200; July 14, 1890, G. D. Barnard & Co., shelving and boxing in vault, $1,003; Sept. 4, 1890, to March 11, 1891, G. W. Borman, indexing and platting county records, $6,300; Jan. 16, 1891, to March 11, 1891, E. F. Voight, plat book, $850; Jan. 16, 1891, to March 11, 1891, C. H. Whitney, experting county books, $900; March 11, 1891, Union County, bridge contract, $1,107; July 13, 1889, John Dooley, purchase of toll road, $1,500; June 10, 1889, S. J. Weatherby, purchase of toll road, $3,000; June 10, 1889, Wm. Parker, purchase of toll road, $1,500.

There is a further finding that $35,000 of this indebtedness was outstanding when warrants Nos. 2,676 and 2,810, above referred to, were issued. It is virtually agreed between counsel that the court's findings in these particulars are practically correct; but the controversy is touching the nature of the indebtedness of the county thus outstanding, whether voluntary or involuntary.

The matter of constructing bridges, building a courthouse and jail, placing shelving and boxing in the vault,

insuring county property, and purchasing toll roads must be conceded to be within the discretion of the county court, as it may make such improvements and incur such expenses or not, as it pleases, regard being had to the constitutional inhibition to the creation of county indebtedness.

The law authorizing the construction and repair of county bridges is carefully drawn, and comports, by intendment, with the exact idea here advanced. Section 4140, Hill's Ann. Laws, reads as follows : "That the county courts of the several counties in this state be and they are hereby authorized to apply in their discretion any moneys in the county treasury not otherwise appropriated towards defraying the expenses of building or repairing bridges on any of the county or state roads within their respective counties."

So, also, is the county court authorized to provide for the erection and repairing of courthouses, jails, and other necessary buildings for the use of the county : Hill's Ann Laws, § 896, subd. 1. But it may exercise a discretion when to build or repair, or whether it will do either. The legislature has not cut short its volition in any particular, as it pertains to the exercise of such authority. Public necessity might demand the erection or repair of such buildings ; but the public revenues might inhibit it, and the county authorities, while they have volition in the premises, must pay attention to the revenues as well as the necessities.

In so far as it pertains to insurance on the public buildings and the purchase of toll roads, these are matters which counsel for plaintiff explicitly concede to be within the voluntary exercise of the county's authority. Such is also the case as it concerns bounties on scalps of wild animals. This disposes of all the items of the court's finding except the Borman, Voigt, and Whitney

items, aggregating $8,050. These we will dispose of later, as a discussion of them will involve the validity of the warrants constituting the subject of controversy.

Now, it is urged by plaintiff, as we have seen, that the cash assets of the county should be first deducted from the voluntary indebtedness, and that the balance remaining will be the measure of the county's voluntary liability under the constitution; and it is claimed that such assets are composed of the following items:

Funds in the county treasury applicable to the payment of county
   warrants _____$ 4,186 44
Estimated unpaid taxes_____ 29,664 32
Delinquent taxes_____ 2,618 60

   Total _____$36,469 36

In the discussion of this question it must be borne in mind that the county was indebted, including the voluntary indebtedness thus found to have been incurred, in a sum exceeding $150,000. In *Fenton* v. *Blair*, 11 Utah, 78, 39 Pac. 485, Smith, J., speaking for the court, says: "We agree with counsel for the plaintiff that the allowance of claims against the county equal to the revenues for the current year is not a creation or incurring of any indebtedness or liability. While the taxes for the current year are not collected until the end of the year, they are undoubtedly, after they are levied, regarded as a legal certainty, and are to be treated as if already collected, and allowances may be made against such taxes to the extent of such levy." And in *State* v. *Hopkins*, 14 Wash. 59 (44 Pac. 134, 550), it was held that the amount of taxes assessed for county purposes upon the tax roll for the current year should be deducted from the outstanding indebtedness to determine its amount, within the meaning of the constitution, limiting the county indebtedness to $1\frac{1}{2}$ per cent. of the value of its taxable property as shown by its previous year's assessment.

The same principle was ruled as respects delinquent taxes appearing upon former rolls. These unpaid taxes were considered and treated as cash assets of the county, and all are to be deducted from the outstanding indebtedness for a correct ascertainment of the county's constitutional liabilities.

In Iowa there was a modification of this doctrine, which is voiced by the decisions in *Grant* v. *City of Davenport*, 36 Iowa, 396, and *City of Council Bluffs* v. *Stewart*, 51 Iowa, 358 ( 1 N. W. 628 ). In the former it is held that when the contract pertains to the ordinary expenses of the municipality within the limit of the current revenues, and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness, within the meaning of a constitutional provision inhibiting cities from incurring an indebtedness exceeding five per centum of the value of their taxable property. But in the latter case, which involved the issuance of bonds in the promotion of street improvements, it was held that uncollected taxes and the levy for the current year are not to be deducted from the outstanding debt for the purpose of ascertaining the real indebtedness. These cases recognize the authority of the municipalities to anticipate current revenues in the ordinary expenditures incident to the promotion of their purposes, but none other ; and they seem more consistent with the policy adopted by this court in considering such ordinary expenses as not within the constitutional inhibition against the accumulation of indebtedness than the other cases cited. But it can make no difference to plaintiff whether we adopt the one position or the other of those courts, or whether we adopt either ; for if all the anticipated revenues, including cash in the treasury, should be deducted from the total indebtedness of the county existing at the time

of the issuance of the warrants in controversy, the net
indebtedness of the county would still be largely in ex-
cess of the $5,000 limit, as it would be represented by
the difference between $150,000 and $36,469.36.   It is
not claimed that any special levy or appropriation of the
taxes then unpaid was ever made to meet or defray any
part of the expenses or liabilities of the county which
these warrants represent; so that they are not payable
out of any particular fund, but out of the general fund
in the ordinary course.

We take no note under the constitutional limitation of
the ordinary expenses of the county, or such as is im-
posed upon it by law, and which it is powerless to pre-
vent; but the current revenues are levied to meet and
dissipate the liabilities incurred thereby, and, while they
may be used in the discharge of debts voluntarily in-
curred, there is a signal vice in the logic which asserts
that the entire revenues may be anticipated by expenses
of voluntary creation upon the part of the county author-
ities.   Such a proposition would have the effect to aug-
ment the constitutional limitation by the amount of the
current revenues of a given year and all delinquent taxes
standing upon the assessment rolls, and all of voluntary
contraction as distinguished from the ordinary expenses
in maintaining the county government.   Such was clearly
not the intendment of the constitution, and, if it speaks
solely with reference to voluntary indebtedness, $5,000
of such must be held to mark the limit, regardless of the
status of the levy for current expenses and taxes stand-
ing delinquent.   We do not mean to say that there might
not be a special levy to meet special liabilities about to
be incurred, or a setting aside and appropriation of par-
ticular or surplus funds to meet such intended liabilities
which might not be obnoxious to the constitutional in-
hibition.   No such question is presented here, and hence

we do not pass upon it; but we do hold that unappropriated current revenues, including those past due and uncollected, cannot be anticipated by voluntary indebtedness of the county, especially when the county is otherwise largely indebted for the ordinary current expenses. Such indebtedness must be counted by its exact measure, and, when it aggregates $5,000, that marks the limit of the county's authority to contract any liability of the nature beyond it: *City of Council Bluffs* v. *Stewart*, 51 Iowa, 385 (1 N. W. 628). See, also, *Salem Water Co.* v. *City of Salem*, 5 Or. 29. With this understanding of the constitutional inhibition, we are fully warranted in saying that, when all the warrants in controversy were issued, the county had passed the prescribed limitation of indebtedness.

This brings us back to the question whether all or any of such warrants were issued to cover liabilities not voluntarily incurred, but thrust upon the county by operation of law, for, if so, they are not within the constitutional intendment, and must be considered valid claims against the county, worthy of recognition. What we have said heretofore practically disposes of the Barnard & Co. warrant, No. 3,543, issued for shelving, and the Ferguson warrant, No. 3,646, for insurance, neither of which may be accounted as a liability which the county was powerless to prevent.

With these may be included the Chambers warrants, representing the purchase of a poor farm. Unquestionably this was a matter of purely voluntary inception, as it was entirely discretionary with the county authorities to assume the burdens of the purchase or not, as it was so disposed.

The Borman warrants purport to have been issued for indexing and platting; and it is claimed that such services were authorized and required by the acts creating

and extending to Baker County the office of recorder of conveyances. Borman was the incumbent from July, 1890, to July of 1892. Such acts provide, among other things, that the recorder of conveyances shall keep a general index, both direct and indirect, divided into certain designated heads, also a large, well-bound book, in which shall be platted all maps of towns, villages, or additions to the same within his county, together with the description, acknowledgment, or other writing therein. It is further provided that he shall receive, for his services in recording any conveyance by law authorized to be recorded, the same compensation theretofore allowed the county clerk for similar services, and that he " shall receive from the county for indexing records already made such compensation as the county judge and county commissioner may deem sufficient, and for indexing every tract or lot of land thereafter in the direct or indirect indexes the sum of ten cents for each tract or lot of land, to be paid by the person having the instrument recorded ": Hill's Ann. Laws, §§ 2401, 2403, 2405, 2406. Previous to these enactments, there was and had been in vogue for many years a system of recording town plats and indexing records, and apparently the purpose of the legislature was to effect a change in the system in both respects ; but, as it regarded plats previously recorded and records previously indexed, the law is directory only, and the counties were accorded a wide discretion when the work of replatting and reindexing should be done, as is evidenced by granting to the county court the power to fix the compensation for the work of reindexing. Nothing is prescribed touching compensation for replatting. The expense incident thereto was not an ordinary one in county affairs, nor was it necessary for the maintenance of the county government in the due and regular exercise of its functions. Hence, we think, the liabili-

ties incurred for Borman's services in indexing and platting for which these warrants were issued are such as fall within the constitutional inhibition, and therefore not sustainable.

These warrants are void for another reason. When they were issued, it appears that $33\frac{1}{3}$ per cent. was added to the accounts presented for services rendered presumably for the purpose of bringing the warrants up to a cash basis in the market. This the county court had no authority to do, as it had the effect to increase the liabilities of the county by the amount of the percentage : *Foster* v. *Coleman*, 10 Cal. 278.

The warrants issued to C. H. Whitney stand upon a different basis. One witness testifies, in effect, that he was employed to bring the books up to the present time, the books of the former clerk being about one year behind ; and another, that he was employed to investigate the books kept by the county officials, to ascertain whether there was any stealing being done. Either service would appear to be necessary to the orderly and prudent management of the business and governmental affairs of the county. It was such a service, so far as we are informed, by the record, as the county could not well dispense with for the time being even, and perform understandingly and intelligently the functions pertaining to its organization. With the reasonableness of the charge or the propriety of incurring the expense we have nothing to do, as they are not made issues in this proceeding. These warrants, aggregating $475, must therefore be declared valid.

The next question is touching the effect of payment by the lawfully constituted county authorities of outstanding indebtedness, voluntarily incurred, beyond the constitutional limit, with knowledge of their invalidity. We cannot sanction the suggestion that such conduct has es-

topped the county or its taxpayers from asserting the invalidity of others of the same nature still outstanding. The power of ratification, as it extends to such liabilities, does not lie with the county court or any other of the county's agents or officials. ''A ratification is,'' says Mr. Justice Field, in *Marsh* v. *Fulton Co.*, 77 U. S. (10 Wall.), 676, ''in its effect upon the act of an agent, equivalent to the possession by him of a previous authority. It operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally.'' See, also, *Loan Association* v. *Topeka*, 87 U. S. (20 Wall. 655); *Daviess Co.* v. *Dickinson*, 117 U. S. 657 (6 Sup. Ct. 897); *Norton* v. *Shelby Co.*, 118 U. S. 425, 451 (6 Sup. Ct. 1121). The logic is conclusive against plaintiff's position.

Having received the benefits, is the county precluded from asserting the invalidity of the warrants issued in consideration thereof? It is tersely, but pointedly, stated, in 7 Am. & Eng. Enc. Law (2d ed.) 930, that, ''when the constitutional limit has been reached, the county has no further capacity to make contracts out of which additional burdens may arise. As to such contracts it may be said that the county has no existence, and the disability extends to all forms of action, whether by parol, by deed, by confession of judgment, or any other device.'' When the constitutional limit has been reached, all acts of a voluntary nature involving the county with liabilities are *ultra vires*. All authority of binding force absolutely ceases, and the county cannot be mulcted with indebtedness either by direction or indirection, so that a receipt of benefits does not raise even an implied liability. The principle involved is discussed in *City of Portland* v. *Bituminous Pav. Co.*, 33 Or. 307 (52 Pac. 28), recently decided. See, also, *Sutro* v. *Pettit*, 74 Cal. 332 (5 Am.

St. Rep. 442, 16 Pac. 7 ) ; 1 Dillon, Mun. Corp. ( 4th ed ), §§ 457, 458, 504, 935. The estoppel extends to matters involving informalities and irregularities in the observance of law, but never to matters entirely beyond the scope of constitutional authority.

Neither was the recognition of these warrants as a part of the indebtedness of Baker County, by the commission appointed to apportion such indebtedness between the counties of Baker and Malheur, such an act as will estop the county or its taxpayers to assert their invalidity. The commission was certainly clothed with no higher authority than the county court, if, indeed, it possessed any authority of a similar nature. But no such question as the unconstitutionality of the issuance of the warrants in controversy was made or determined before or by the commission, and it could have no binding effect as *res adjudicata*, if it was conceded that the requisite privity existed between the parties concerned. The decree will be that the Whitney warrants be restored to their original condition, but that plaintiff be perpetually enjoined from enforcing payment of all the other warrants involved in this suit.

MODIFIED.

Decided at PENDLETON, 13 August, 1898.