Decided 17 June, 1901.

## MUNICIPAL SECURITY CO. *v.* BAKER COUNTY.

[65 Pac. 369.]

Counties—Voluntary Debts—Recovery of Consideration.

1. Though a voluntary agreement entered into by a county, involving it with liabilities after the limit of its indebtedness has been reached, is *ultra vires* and unenforceable, one contracting with a county under such circumstances may recover property transferred to the county in such transaction, providing it can be identified, upon returning unpaid warrants issued by the county in return for the property.

County Debt Limit—Limitation of Actions.

2. The right to recover the consideration paid in part performance of a void contract accrues at the time of payment, and the statute of limitations then begins to run; thus, where a county voluntarily purchased sundry chattels in 1891, it being then in debt beyond the constitutional limit, and the warrants so issued were, in 1897, declared by the appellate court *ultra vires* and nonenforceable, the cause of action of a suit to recover the specific personal property accrued when the property was delivered in 1891, and not when the mandate of the appellate court was entered.

Counties—Prohibition Against Tenancy in Common.

3. The Constitution of Oregon, Article XI, § 9, providing that no municipal corporation shall become a stockholder in any corporation or association, does not prevent a tenancy in common between a county and a private person or company.

From Baker : Robert Eakin, Judge.

This is a suit by the Municipal Security Company, a private corporation, of Portland, Maine, against Baker County and its judge and commissioners, to rescind the sale of certain personal and real property, to establish a trust therein, and to compel the county to deliver the former and to convey an undivided interest in the latter to the plaintiff. The facts, as detailed by the complaint, are that on July 13, 1891, G. D. Barnard & Company delivered to said county certain shelving now in the

vaults of its court house, for which it issued to them a county warrant for the sum of $542.90 ; that on August 17, 1891, George M. Chambers, being the owner of one hundred and sixty acres of land in said county, executed thereto a warranty deed thereof, receiving therefor, with others, twelve county warrants of the denomination of $100 each and one of $50, and said premises have been and are now used by the county as a poor farm ; that the county orders so issued, having been presented to the said treasurer for payment at the time they were severally issued, and indorsed by him "Not paid for want of funds," were thereupon assigned to the plaintiff, which is now the owner thereof ; that C. H. Stuller and others, in a suit against said county and its judge, commissioners, sheriff, and treasurer, secured a decree enjoining the payment of plaintiff's and other warrants, on the ground that they had been voluntarily issued after the constitutional limit of the county's indebtedness had been reached ; but the plaintiff, not having been a party to that suit and therefore not being bound by the decree rendered therein, instituted a suit to relieve its warrants from the effect thereof, and, a trial being had, the suit was dismissed, and the decree affirmed on appeal : *Municipal Sec. Co.* v. *Baker County,* 33 Or. 338 (54 Pac. 174). It is further alleged, in effect, that the sales so consummated by Barnard & Company and Chambers were made in good faith, and that they and the plaintiff, relying upon the validity of the county warrants issued in consideration thereof, made no claim to the property so sold until after the decree was affirmed in the suit heretofore instituted by the plaintiff, which believed that said warrants would be paid in their regular order, but that no fund has ever been raised out of which any part thereof could be paid ; that for five years prior to the commencement of this suit said county has

leased the land so conveyed to it by Chambers, receiving therefor the annual rental of $150, and that the use of said shelving since the decree was rendered in the *Stuller Case* is of the reasonable value of $50 per year ; that, said warrants having been held invalid, the plaintiff tenders them to the county and prays a decree for said shelving and the undivided five eighths of said real estate. A demurrer to the separate causes of suit having been sustained on the ground, *inter alia*, that the complaint did not state facts sufficient to constitute a cause of suit, and the plaintiff declining to plead further, the suit was dismissed ; and hence this appeal.

REVERSED.

For appellant there was a brief and an oral argument by *Messrs. Charles A. Johns* and *Thomas H. Crawford.*

For respondent there was a brief and an oral argument by *Messrs. Samuel White*, District Attorney, and *F. M. Saxton.*

MR. JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

1.   The trial court, in rendering the decree complained of, held, as we understand, that the statute of limitations had run against the right to recover the shelving, and that the demand for a reconveyance of the land could not be split up, assuming that the remaining warrants issued for the purchase price were outstanding ; but, if paid, that the organic law of the state, Art. XI, § 9, prohibited the county from becoming a tenant in common in respect to the ownership of the land.   When the constitutional limit of a county's indebtedness has been reached, its capacity to make contracts is suspended, and remains dormant until its voluntary obligations are reduced below.

the prescribed limit. Any voluntary agreement entered into by a county, involving it with liabilities after the boundary of its power to make contracts has been reached, is *ultra vires*, and the receipt of benefits by it affords no ground for invoking even an implied liability to pay any compensation therefor : *Municipal Sec. Co.* v. *Baker County*, 33 Or. 338 (54 Pac. 174). Notwithstanding the incapacity of a municipal corporation, under such circumstances, renders its contracts unenforceable, those who have parted with their property in dealing with it during its interval of quiescence are not wholly remediless ; for, when such property can be identified, the party entitled thereto may recover it by placing the other *in statu quo,*— the rule being that neither party will be heard to allege the invalidity of a transaction which is simply *ultra vires*, while holding the fruits thereof : *Manchester & L. R. Co.* v. *Concord R. Co.* 66 N. H. 100 (20 Atl. 383, 9 L. R. A. 689, 49 Am. St. Rep. 582).

Thus, in *Chapman* v. *Douglas County*, 107 U. S. 348 (2 Sup. Ct. 62), the plaintiff executed to the defendant a warranty deed of two tracts of land, containing ten and one hundred and sixty acres, respectively, in consideration of $2,000 in county orders and four promissory notes, of $1,500 each, payable in one, two, three, and four years, respectively, issued in the name of the county by its commissioners, who in the same manner purported to execute a mortgage on the premises to secure the payment thereof. The county took immediate possession of the real property, which it used as a poor farm, expending in the improvement thereof the sum of $30,000 ; but the title to the smaller tract failed. The notes and mortgage having been assigned, the holder thereof commenced a suit in the state court to foreclose the same ; but a demurrer, interposed on the ground that the notes and mortgage were void *ab initio* for want of authority to execute them,

having been sustained, the suit was dismissed without prejudice, and a similar suit, instituted in the Circuit Court of the United States for the District of Nebraska, was dismissed in the same manner for a like reason. Thereupon Chapman was joined with the holder of the notes and mortgage, for the benefit of the latter, in a suit in said circuit court to rescind the contract of sale and to recover the land, and it was held that, as the notes and mortgage were invalid for want of authority to execute them, the holder thereof was entitled to the relief demanded, upon the surrender of the void securities, and decreed that the county execute a deed to the premises, unless within a reasonable time it paid the amount found to be due, making a proper allowance for the failure of the title to a part of the land.   Mr. Justice MATTHEWS, speaking for the court in rendering the decision, says : ''The conveyance by Chapman to the County of Douglas passed the legal title, but upon a condition in the contract which it was impossible in law for the county to perform.   There resulted, therefore, to the grantor the right to rescind the agreement upon which the deed was made, and thus to convert the county into a trustee, by construction of law, of the title for his benefit, according to the often-repeated rule, as stated by Hill, Trust. 144, that 'whenever the circumstances of a transaction are such that the person who takes the legal estate in property can not also enjoy the beneficial interest, without necessarily violating some established principle of equity, the court will immediately raise a constructive trust and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who, in equity, are entitled to the beneficial enjoyment.'   Upon this principle the vendor of real estate is treated as trustee of the title for the purchaser, and the mortgagee, having the legal title, after payment of the mortgage debt is a

trustee for the mortgagor.   The analogy is complete between these and every case, of which the present is one, where the holder of the legal title is under a duty to convey to another."

So, too, in *Parkersburg* v. *Brown*, 106 U. S. 487 (1 Sup. Ct. 442), the plaintiff in error, a municipal corporation, in pursuance of an act of the legislative assembly of West Virginia, loaned its bonds to the amount of $20,000 to persons engaged in manufacturing, taking as security therefor a conveyance of the latter's real estate and personal property to a trustee, who was authorized to sell the same upon default in the payment of the semiannual interest or of the annual installments of the principal. The persons to whom these bonds were loaned were adjudged bankrupt, and the assignee of their estate, having taken possession of the property so conveyed to the City of Parkersburg, sold the tools and machinery belonging thereto ; and the trustee under the original deed, having been also named as trustee in a subsequent deed given to secure a debt, upon default in the payment thereof, conveyed the said real property to the plaintiff in error. The bonds so loaned were assigned to the defendants in error, and, no part of the principal thereof having been paid, and default having been made in the payment of the interest, a suit was instituted which sought to charge the city as trustee ; and it was held that no authority existed for the issuance of the bonds, and that the assignment thereof passed its interest in the security to the defendants in error, who were entitled to the proceeds arising from the sale of the property so hypothecated. See, also, *Hitchcock* v. *Galveston*, 96 U. S. 341 ; *Willis* v. *Board of Com'rs*, 86 Fed. 872 (30 C. C. A. 445).

2.   The real property conveyed and the personal prop-

39 OR.— 26.

erty delivered to Baker County being capable of identifi-
cation, the duty to restore it, upon a surrender of the
warrants issued in consideration thereof, is manifest;
and the only questions involved are whether this suit
was instituted in time to recover the personal property,
and does the constitution of the state prohibit a county
from being a tenant in common of real property? The
theory of plaintiff's counsel upon the first inquiry is that,
although the shelving was delivered July 13, 1891, the
county did not repudiate the contract of purchase until
January 18, 1897, when compelled to that course by man-
date of this court (*Stuller* v. *Baker County*, 30 Or. 29, 474
Pac. 705), and, this suit having been commenced within
six years from that time, the plaintiff should be permitted
to recover the specific property so delivered (Hill's Ann.
Laws, § 6; subd. 4); while the theory of defendant's coun-
sel is that, the purchase of the shelving having been
voluntary, and the county, at the time thereof, having
reached the limit of its indebtedness under the consti-
tution, the latter was powerless to make any contract
in respect thereto, so that plaintiff's right to rescind ac-
crued *eo instante*, but, not having instituted a suit therefor
within six years from that time, its right to recover the
specific property is barred by the statute of limitations.
In *Chapman* v. *Douglas County*, 107 U. S. 348 (2 Sup. Ct.
62), upon which plaintiff's counsel rely, it was held that,
although the right of the claimant to rescind the contract
and demand a reconveyance accrued at the date of the
deed, he was not bound to exercise the right, and his
cause of action did not accrue until he had manifested
his election. In that case the contract of purchase by
the county was not *ultra vires*, the only irregularity being
the giving of promissory notes payable at stated times
and the execution of a mortgage as security therefor. In
the case at bar, however, the county having reached the

limit of its indebtedness, it may be said that, as to volun-
tary contracts incurring liabilities, it had no existence
(7 Am. & Eng. Ency. Law [2 ed.], 930; *Municipal Sec.
Co.* v. *Baker County*, 33 Or. 338, 54 Pac. 174), and in con-
sequence of this incapacity the contract for the purchase
of the shelving was void and incapable of ratification
(1 Dillon, Mun. Corp. § 457; 1 Beach, Pub. Corp. § 217;
*Sutro* v. *Pettit*, 74 Cal. 332, 5 Am. St. Rep. 442, 16 Pac. 7).
Rescission is the act of annulling or canceling a voidable
contract (21 Am. & Eng. Ency. Law [1 ed.], 26); but, as
the county could not legally assent to the purchase of the
shelving the contract therefor was void, and, neither party
being bound thereby, no election to rescind could be exer-
cised by either. The cause of suit, therefore, accrued
when the shelving was delivered, and, as more than six
years intervened from that time until the complaint was
filed, the right to recover the specific personal property
was barred by the statute of limitations, and hence no
error was committed in sustaining the demurrer to the
second cause of suit.

3.  Considering the other question, the plaintiff alleges
its ownership of county warrants to the amount of $1,250,
issued to Chambers and assigned to it, and claims a
conveyance of an undivided five eighths of the premises
conveyed by Chambers to the county. The ownership
of the remaining warrants issued in consideration of the
poor farm is not averred, but the opinion of the trial
court recites that it was admitted at the argument that
all the other warrants, not held by the plaintiff, have been
redeemed by the county. We shall treat the inquiry,
therefore, as if the complaint had stated that fact. The
organic law of the state, Art. XI, § 9, is as follows:
" No county, city, town, or other municipal corporation,
by vote of its citizens or otherwise, shall become a stock-

holder in any joint stock company, corporation, or association whatever, or raise money for, or loan its credit to, or in aid of, any such company, corporation or association." In *Ampt* v. *City of Cincinnati*, 56 Ohio St. 47 (46 N. E. 69, 35 L. R. A. 737, with note on the right of a municipality to be a part owner of property), the defendant owned a system of waterworks which it sought to enlarge in pursuance of an act of the legislative assembly of Ohio empowering the governor to appoint commissioners, who were authorized to contract in the name of the city with any person, firm, or corporation for the enlargement of its waterworks. The addition to the existing works was to be owned by the persons or corporations making it, and leased to the city, which was to operate it as an entirety. The contract having been entered into by the commissioners, which, if executed, would have united the public funds and private capital in an enterprise to be managed and conducted by the city, the plaintiff, a taxpayer, instituted a suit to enjoin the outlay by the city necessarily incident thereto ; and it was held, under a clause of the constitution of that state almost identical with ours in that respect, that a city must be the sole proprietor of the property in which it invests its funds, and it can not unite its property with the property of individuals or corporations, so that, when united, both together form one property. Mr. Justice BURKET, in interpreting the clause adverted to, says : " This section of the constitution not only prohibits a ' business partnership,' which carries the idea of a joint or undivided interest, but it goes further, and prohibits a municipality from becoming the owner of part of a property which is owned and controlled in part by a corporation or individual. The municipality must be the sole owner and controller of the property in which it invests its public funds. A union of public and private

funds or credit, each in aid of the other, is forbidden by the constitution. There can be no union of public and private funds or credit, nor of that which is produced by such funds or credit. The whole ownership and control must be in the public. The city may lease from an individual or corporation any property of which it may need the use, or, having property the use of which it does not need, it may lease the same to others; but it can not engage in an enterprise with an individual or corporation for the construction or erection of a property which, as a completed whole, is to be owned and controlled in part by the city and in part by an individual corporation.''

The trial court having rested its decree upon the decision in that case, the question to be considered is whether the clause of our constitution prohibits a county from becoming a tenant in common in respect to real property. The use to which the premises are subjected by the county can have no bearing upon the inquiry; for, if the organic law of the state interdicts the unity of possession, the prohibition is alike applicable to any and all real property. We can not believe that the language of our constitution hereinbefore quoted is susceptible to the construction given to a similar clause by the Supreme Court of Ohio, nor yield our consent to the reasons assigned for the decision there rendered. It is the duty of the court, in interpreting a constitution, which is a limitation and not a grant of power, to consider the existing evil intended to be avoided by the prohibition. The establishment of manufacturing industries, where labor finds profitable employment, generally tends to the happiness of the workmen, thereby augmenting the wealth and increasing the importance of the city, town, or village in which they settle, resulting from their home building and the inauguration of various

trades that spring into existence and are supported by
their patronage. So, too, the construction and operation
of railways have brought the producer and consumer
into closer relations, to the advantage of each, resulting
in the rapid development of the country through which
the trains pass, and benefiting the stations at which
they halt. A knowledge of the advantages that usually
attend the establishment of manufactories and the bene-
fits that generally follow the construction of railways
has prompted enterprising citizens to burden their prop-
erty with excessive taxation to secure these returns ; but
in many instances the hopes of those who have mort-
gaged the future to advance the interests of the present
have not been realized, and the disappointment incident
thereto has in many states prompted the people, in the
exercise of their sovereign right, to incorporate in their
constitutions such clauses as have been adverted to. The
wisdom of this rule is apparent, but we do not think it
can be invoked, except in instances similar to those here
enumerated ; and, the reason failing, the rule is inappli-
cable. To allow Baker County to pay off one or more of
the warrants issued in consideration of a deed to the
land, and insist that, notwithstanding it could not con-
summate a valid contract of purchase at the time the
conveyance was executed, it could by such payment pre-
vent a recovery, would be to permit it to take advantage
of its own wrong ; for, as was said by Mr. Justice
Mitchell, in *Bass F. & M. Works* v. *Board of Com'rs*, 115
Ind. 234 (17 N. E. 593), "the doctrine of *ultra vires* does
not absolve municipal corporations from the principles
of common honesty." In the case at bar, if the relief
demanded were granted, the county would not thereby
become a stockholder in any joint stock company, cor-
poration, or association whatever ; nor would it be rais-
ing money for, or loaning its credit to or in aid of, any

such company, corporation, or association.  The decree will therefore be reversed, the demurrer overruled as to the first cause of suit, and the cause remanded for such further proceedings as may be necessary, not inconsistent with this opinion.  REVERSED.

Decided 17 June, 1901.