Decided December 31, 1910.

## CUNNINGHAM v. UMATILLA COUNTY.

[112 Pac. 437.]

COUNTIES—EMPLOYMENT OF DETECTIVE—RATIFICATION.

1. The employment of a detective by a county, though irregular, was ratified by the action of the county court in allowing the bill for his services and directing payment thereof by the county.

COUNTIES—DEBT LIMIT—CONSTITUTIONAL INHIBITION—APPLICATION.

2. A constitutional debt limit imposed on a county is applicable only to indebtedness voluntarily incurred, and not to such as cannot be avoided without danger to the peace and good order of the community, and hence the fact that the limit had been reached was no valid objection to the county's liability for the services of a detective employed to assist in enforcing the liquor law.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE McBRIDE.

This is a suit by Charles Cunningham and A. F. Michael against Frank Saling, county clerk of Umatilla County, Oregon, and *ex-officio* clerk of the county court of said county; George W. Bradley, treasurer of Umatilla County, Oregon, and the Thiel Detective Service Company, a corporation, to enjoin the delivery and payment of a warrant drawn by order of the county court of Umatilla County in favor of the Thiel Detective Agency for $356, for services rendered the county in procuring evidence to convict violators of the local option law in such county. The evidence tends to show that in the year 1908 violations of the local option law became so frequent and flagrant as to become a public scandal. The local officers were appealed to by the district attorney to assist in procuring evidence against the offenders, but either could not or would not afford him any assistance. The court not then being in session, he brought the matter of procuring a detective before the county judge, who agreed that such was the proper course and assured him that it was probable that the county court would ratify such action. Thereupon, on request of the district attorney, the Thiel Detective Agency sent an operative, through whose efforts a large number of offenders were convicted and a large amount of money in fines was paid into the county treasury. The agency presented a bill for $356 for this service to the county court, which approved the same and ordered it paid. The indebtedness of the county at the time exceeded the

$5,000 limit prescribed in the constitution.    Judgment for defendant and plaintiffs appeal.    AFFIRMED.

For appellant there was a brief and oral arguments by *Messrs. Carter & Smythe.*

For respondent there was a brief and an oral argument by *Mr. Gilbert W. Phelps.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. While the original employment of the detective in this matter was irregular and legally unauthorized, the action of the county court in allowing the bill and directing the payment of it amounted to a ratification of the original employment, so in this respect the case stands in the same condition as if the county court had employed the detective in the first instance: *Steiner* v. *Polk County,* 40 Or. 124 (66 Pac. 707).

2. While the testimony makes it clear that the indebtedness of the county exceeded the constitutional limit, yet it has been held that the constitutional inhibition only extends to voluntary indebtedness and not to such as is thrust upon it by operation of law, by which phrase is meant such expenses as cannot be avoided without danger to the peace and good order of the community. Thus, in *Municipal Security Company* v. *Baker County,* 33 Or. 339 (54 Pac. 174), it was held that the employment of an expert to check the county books to ascertain whether there had been any embezzlement of the county funds was a duty imposed upon the county by operation of law, and that a warrant issued in payment of such services was valid, although the county had already greatly exceeded the constitutional limit of indebtedness. It was no doubt true that the county authorities could have refrained from hiring an expert and have trusted to chance, and to the honesty of the official concerned, as to the outcome.    They had the physical power to do so, but, as the court said:

"It was such a service, so far as we are informed by the record, as the county could not well dispense with for the time being, even, and perform understandingly and intelligently the functions pertaining to its organization."

In the same case the court say:

"The most important function of the county is to maintain a local government subordinate to, but an arm of, the State. Now, the expense incident to and necessary under the laws prescribed by the State to organize and maintain such a government may be said to be thrust upon it by law."

This is good law and fits the case at bar. The principal function of every county government is the protection of society, the enforcement of law, and the punishment of crime. This is the highest and most pressing duty which the law imposes upon any county or upon the county authorities, and any expense necessary to punish crime and bring the guilty to justice is an expense imposed upon the county by law. It is a duty that admits of no volition. The authorities cannot avoid it if they would; they should not if they could. In all expenditures for the punishment of crime the real question is, are they necessary in order to secure the enforcement of the criminal laws? If they are, then a duty exists to make the expenditure, and it may be said to be involuntary in the sense that it is not an expense sought and incurred as the result of deliberate bargain, but arises from the necessity of enforcing the law.

In this case it is evident that the law was being flagrantly violated, and that the local authorities either sympathized with its violation or were too inefficient to prevent it. Under such circumstances there rested upon the county court the duty to use such measures as were necessary to prevent and punish crime and they have done so effectually. To hold with the contention of plaintiffs would allow many crimes to go unpunished. If a

murder should be committed in Umatilla County and it became necessary to offer a reward, some friend of the murderer, under the guise of a taxpayer, could come forward and enjoin the county from doing so, on the pretext that it was exceeding its indebtedness. The hands of the county authorities ought not to be so fettered, and they will not be.

Judgment affirmed.                          AFFIRMED.

MR. JUSTICE SLATER delivered the following dissenting opinion.

I cannot give my assent to the conclusion reached in this case. The debt in question was incurred by the district attorney of Umatilla County with the consent of the county judge in employing special detectives to assist in discovering violaters of the local option laws, and in procuring evidence of such violation. The excuse for obtaining such special assistance is that local officers would not render the necessary aid to the district attorney to ferret out violaters of the law. This case should not be confounded with one where some person has been charged by complaint in a court with the commission of a crime, and the duty is thrust by law upon the prosecuting officer to secure evidence to convict; but it rests primarily upon a mere suspicion or assertion of an officer that the law in some respect is being violated, and upon an assertion that local officers, who were appealed to by the district attorney to assist in procuring evidence thereof, either could not or would not render him assistance. The constitutional limitation (Section 10, Article XI), upon counties contracting debts, reads:

"No county shall create any debts or liabilities, which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion. * *"

If the plain meaning of the words of this clause be followed, no doubt or confusion can arise, and no justifi-

cation can be found for injecting constructive interpolations into it. It was early held by this court in the case of *Grant County* v. *Lake County*, 17 Or. 453 (21 Pac. 447), that where the debt in question was not created by the county, but the liability was imposed by the legislature, it was not within the prohibition. There is no straining of the ordinary signification of the words in such construction; and undoubtedly, when the legislature creates an office and requires the salaries and other expenses thereof to be paid out of the county funds, the debt is created not by the county, but by legislative power, and hence is not within the limitation: *Lewis* v. *Widber*, 99 Cal. 412 (33 Pac. 1128). From this the distinction arose between a class of debts said to be voluntarily created by the county and those imposed upon it by law. But when it is said, as it is in the majority opinion, as the rationale of the decision, that "the most important function of the county is to maintain a local government subordinate to, but as an arm of, the state," and that, "the expense incident to and necessary under the laws prescribed by the state to organize and maintain such a government may be said to be thrust upon it by law," all limitation upon debts created by the county has practically been taken away. The expression quoted is from the opinion of Mr. Justice WOLVERTON in *Security Company* v. *Baker Co.*, 33 Or. 338, 344 (54 Pac. 174). But in a later case (*Eaton* v. *Mimnaugh*, 43 Or. 465: 73 Pac. 754) the whole question was reviewed at some length by Mr. Justice BEAN. He expressly concedes that it is not safe to rest the distinction upon the unqualified statements above quoted, for he says:

"It manifestly cannot be held that all liabilities arising from the mere discharge of some public duty by a county, or in the performance of some powers conferred upon it by law, are involuntary obligations, and therefore not an indebtedness within the meaning of the constitu-

tion. A large part of the obligations incurred by every county may without any great impropriety be said to be involuntary, in the sense that the discharge of the duty in which they were incurred would not have been neglected or avoided without disregarding some provision of law; but if that test alone is to be the standard, a county is practically left free to contract unlimited obligations, notwithstanding the provisions of the constitution. This would be violating the language of that instrument, and frittering away its meaning by construction."

Although it is admitted in that opinion that it is difficult, if not impossible, to lay down any general rule whereby so to classify such obligations, a further definition of the interpolated phrase "a liability imposed upon a county by law" was deemed essential, and it was there held that a liability which the county is not at liberty to evade or postpone is not within the prohibition, and the converse was stated as "a liability arising from the performance of some public duty of a discretionary character, or which the county authorities may, in their discretion, postpone indefinitely or temporarily until means are provided for the payment of the expenses incident thereto, cannot be so held." This, it seems to me, is a very uncertain and unsatisfactory rule by which so important a constitutional limitation is to be judged and applied. Indeed, it was said in that case that each case must be determined largely from its own facts, and by the doctrine of exclusion and inclusion. The plain intent of this clause of the constitution is to require counties to transact business upon practically a cash basis. The county has authority to levy taxes annually upon all the taxable property within its limits, with which to raise sufficient revenue to pay its expenses (Section 3085, B. & C. Comp.) ; and the law and the constitution contemplate that it will exercise its powers in that respect.

So, also, certain offices have been created, and the duties thereof defined, to secure the enforcement of the

criminal laws of the State. If the law contemplates that any expenditure, aside from the salaries of such officers, is to be made to assist them in the performance of their official duties, then it is also contemplated that such provision should be made by the county, under the taxing power, to provide in advance sufficient funds therefor.

The sheriff is the executive officer of the county, and his duties are specifically defined by Section 1017, B. & C. Comp., and under certain circumstances he may command the power of the county (Section 1015); but the law contemplates that the necessary and usual expense incurred by him in the performance of his official duties must be provided for in advance, for from the constitutional limitation debts or liabilities incurred to suppress insurrection or invasion only are expressly excepted. Again, the district attorney is the public prosecutor (Section 991, B. & C. Comp.), and is required to institute proceedings before magistrates for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that such an offense has been committed (Section 993, B. & C. Comp.). And, again, a grand jury, having power to compel all persons to come before it and give testimony, is provided to inquire into suspected commission of crimes. Where the law has thus specifically provided methods and means to enforce the law and to ascertain who, if any, have violated the criminal law, and to secure evidence against those charged, I do not think it can be consistently said, with sound reasoning, that the law has imposed upon the county an unavoidable duty to adopt other and different means at great expense to the county to reach a coveted end, simply upon the claim that some officer has failed to effectively discharge his duty, or even upon a claim that the usual and legal method has proved ineffective in the particular case.

Certain it is that the debt in question was created by the act of the county, and was not imposed upon it by law; but, measured by the rule heretofore adopted by this court, and by which it is now attempted to be sustained as not within the prohibition, it was not created by the county in the performance of a duty imposed upon it by law which could not be avoided or postponed because it was not incurred in the manner that the law contemplates such duty is to be performed: *Pacific Undertakers* v. *Widber,* 113 Cal. 201 (45 Pac. 273).