## Pike County *versus* Rowland.

1. Where a board, such as the commissioners of a county, propose to do any deliberative act that will be binding on the absent members, it should be done at a regular stated meeting or a regular adjourned meeting, and if the meeting be special notice is necessary, and it must be personally served, if practicable, upon every member entitled to be present. This rule applies alike to public and private corporations.

2. H., an administrator, signed a writing giving the assent of the stock-holders of a bridge company to the sale of the bridge. *Held*, that as administrator he had the right to control or sell the stock, and his signing the assent was sufficient, as to third persons, whether he then held the stock as administrator or it had vested in him as owner.

3. The true meaning of sect. 8, art. 9, of the Constitution is that no municipality shall create a new debt or increase an existing debt, of more than two per cent. of the assessed property valuation, unless authorized by a public vote. When the debt is less than seven per cent., it is not intended that public officers of municipalities should be deprived of power to make improvements and repairs of public property which may become necessary, provided they keep within the limit of two per cent. of the valuation.

April 1st and 2d 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Monroe county:* Of January Term 1880, No. 66.

Covenant by Lafayette Rowland against Pike county to recover interest on several bonds issued by said county.

The defendant pleaded *non est factum; non infregit conventionem,* and want of consideration, with leave, &c., and also filed the following special pleas:

1. That on the 5th day of November 1875, when it is alleged the covenants set forth in the declaration were made, no meeting of the commissioners of the county of Pike was held at which said covenants could be lawfully made.

2. That on said 5th day of November 1875, while one of said commissioners was by reason of intoxication entirely incapacitated for transacting business, he was induced with another of the commissioners to enter the commissioners' office in the evening and cause the record of the adjournment of the board of commissioners to be falsely and fraudulently altered, and then and there, unlawfully and fraudulently if ever, said covenants were made by said two commissioners.

3. That all the above stated matters were well known to the plaintiff, and that the intoxication of said commissioner and alteration of the minutes were procured by the plaintiff for the purpose of unlawfully and fraudulently obtaining said covenants.

4. That on said 5th day of November 1875, the indebtedness of Pike county exceeded two per cent. of the last assessed valuation of taxable property in said county; and the assent of the

[Pike County v. Rowland.]

electors of said county had not been obtained to the increase of said indebtedness.

The special plea was subsequently amended to aver that two of the commissioners met during the day of the 5th of November 1875, and adjourned to the 9th of November, and that the meeting on the evening of the 5th of November, when it is alleged said bonds were issued, was not in pursuance of any adjournment, and without notice to Geyer, one of the commissioners.

A change of venue was made to the county of Monroe.

At the trial it appeared that by the Act of April 5th 1862, Pamph. L. of 1863, 652, George H. Rowland and others were incorporated under the name of the Lackawaxen Bridge Company ·for the purpose of constructing a bridge across the Lackawaxen river in Pike county. The bridge was completed in 1863. In the winter of 1864, an act was passed authorizing the bridge company to sell the bridge to Pike county, and the county commissioners to purchase it and issue county bonds therefor. The act, provided, however, that before said sale could be made, the assent in writing of a majority in number of the stockholders should be given. From the testimony on behalf of plaintiff it appeared that a majority of the stockholders signed the assent to the sale, and that the approval of the court was then obtained. Rowland then had some bonds printed, and went to the commissioners to have them executed, but then ascertained that two of the commissioners, Drake and Geyer, were opposed to the purchase. Shortly thereafter, at the general election, on the 5th of November, new commissioners opposed to the purchase of the bridge were elected. It appeared that on the day of the election, Drake, who was defeated at the election for re-election, met Rowland and told him that he had a notion to go in for buying the bridge. On the 4th of November Geyer, Drake and Rosecrans, the then old commissioners, were in regular session, and during its session Geyer asked when the next meeting would be held, and was told on the 9th, but that they would adjourn over to the 5th to finish business. Geyer then left before the close of the meeting. Rosecrans and Drake met on the 5th and Rowland went before them, and the two commissioners determined to purchase the bridge. The meeting adjourned until the evening to enable the counsel of the commissioners to prepare the necessary papers, when the bonds were executed and issued. On the part of the defendant it was shown that A. Hanners, one of the assenting stockholders, claimed to be a stockholder by reason of the following facts: His father had recently died owning some of the stock. He took out letters of administration on his father's estate, filed an inventory and appraisement of the personal property, including this stock, and in the evening of the same day agreed with his mother and three sisters (two of whom were minors without guardians) to take all the personal property at its appraised value.

[Pike County *v.* Rowland.]

The stock was never transferred to him on the books of the company, and at the time of signing this assent, and of the subsequent action of the commissioners based upon it, he had filed no account as administrator nor in any public manner charged himself with the stock. He did not sign the assent as administrator but as an individual claiming personally to own the stock.

Geyer testified that when he left the meeting on November 4th, the understanding was that no further business was to be transacted except the appointment of an assessor, that this was to be done at the meeting of the 5th, and that the meeting of the 4th was to be adjourned to the 9th.

The commissioners' record showed that Rosecrans and Drake did meet on the 5th and transacted the particular business agreed upon, and that an adjournment to the 9th instant was then entered. The commissioners' clerk testified, " They adjourned to the 9th instant. The record of the adjournment to Tuesday, the 9th instant, was made at that time."

Drake was seen with Rowland several times during the afternoon and evening of the 5th—Drake being in a state of intoxication. He was then heard to declare that he was disposed to favor the purchase of the bridge. Later in the evening he, with Rosecrans, the other commissioner, went into the commissioners' office, caused the record to be altered to show an adjournment to that evening instead of the 9th instant, adopted a resolution to purchase the bridge, executed and delivered $2100 county bonds therefor and adjourned. Geyer, as commissioner, filed his protest at once, and the new board of commissioners refused to recognise the transaction. when this suit was brought by Lafayette Rowland (who still held the bonds, having never distributed them to the stockholders of the bridge company) to recover two years' interest.

The defendant proposed to ask Thrall, one of the defendant's witnesses :

Had you any conversation with Sol. Drake, one of the county commissioners, prior to night of November 5th 1875, during the day of the 5th, with reference to his (Drake's) views as to the purchase of the Lackawaxen bridge, what he intended to do, and as to any inducements that had been held out to him by George Rowland or Lafayette Rowland ?

" Objected to and objection sustained." (1st assignment of error.)

Also, to prove by witness that on Friday, November 5th 1875, Sol. Drake said to the witness that he was offered by the plaintiff $500, and a trip to Niagara Falls and expenses paid, if he would assent as commissioner to the purchase of the bridge.

" Objected to and objection sustained." (2d assignment.)

The defendant also objected to the admission in evidence of the

[Pike County *v.* Rowland.]

bonds, on the ground that plaintiff had not shown the assent in writing of a majority of the stockholders of the bridge company.

" Objection overruled."    (3d assignment.)

The defendant submitted the following points, all of which the court refused, constituting respectively, the 4th, 8th and 9th assignments of error :

1. That if the jury believe from the evidence that, during the forenoon or afternoon of the 5th day of November 1875, the commissioners adjourned to meet on Tuesday, the 9th instant, and that the subsequent meeting on the evening of said 5th day of November, was without notice to George Geyer, one of the commissioners, and without his knowledge, then under the law the commissioners, Rosecrans and Drake, had no power at such meeting to purchase the Lackawaxen bridge and issue bonds therefor, and that the county of Pike is not bound by said action.

2. It appearing from the evidence that the indebtedness of Pike county, on the 5th day of November 1872, exceeded two per centum upon the assessed valuation of the taxable property therein, the commissioners were, by the Constitution and laws of this Commonwealth, at that time prohibited from incurring the additional indebtedness of $2100, and such attempted action of two of said commissioners, and the bonds alleged to have been issued by them could not and did not bind the county of Pike.

3. Lafayette Rowland, the plaintiff, having been treasurer of the county of Pike on the 5th day of November 1875, and during the year 1875, is charged with knowledge of the fact that the indebtedness of the county exceeded two per centum upon the assessed valuation of taxable property in said county at that time, and he cannot recover upon the bonds upon which the suit is founded.

The plaintiff submitted the following points :

1. That the net amount of indebtedness of Pike county existing at the time of the adoption of the new Constitution and the issuing of the bonds in question, being less than three per centum on the assessed valuation of taxable property, and the new indebtedness created by the purchase of the bridge not exceeding two per centum on such valuation, the issuing of said bonds is not in contravention of the 8th section of the 9th article of the Constitution, or of the Act of 20th April 1874.

2. That the Act of 23d March 1865, providing for the sale of the Lackawaxen bridge, is not repealed by the 8th section of the 9th article of the Constitution, nor by the Act of the 20th of April 1874, nor is the right to carry out the provisions of said act suspended or controlled by the Constitution or the Act of April 20th 1874.

4. That under the Act of March 20th 1874, the commissioners
13 Norris—16

[Pike County *v.* Rowland.]

of Pike county had a right to increase the then existing debt, or create a new debt, not exceeding two per centum of the valuation.

The court affirmed these points, *pro forma* (6th, 7th and 13th assignments), and reserved the questions involved therein.

In the general charge, the court, inter alia, said : "We charge you that it was not necessary to notify Geyer, the other commissioner, of the meeting on the evening of the 5th, when the bonds were issued, if the other two commissioners were there according to adjournment, or in pursuance of notice to themselves without a previous adjournment."　(5th assignment.)

May 31st 1879, verdict for the plaintiff in the sum of $252, subject to the opinion of the court, whether under the following facts, which they find, to wit : That at the time of the adoption of the present Constitution of this state, and at the time of the purchase of the bridge by the commissioners of Pike county, and for the purchase-money of which the bonds described in the plaintiff's declaration were given, the indebtedness of said county exceeded two per centum, but did not exceed three per centum upon the assessed valuation of taxable property therein, that the purchase or consideration-money for said bridge did not exceed 2¼ mills on the dollar of the assessed value of such taxable property, and the commissioners of said county purchased said bridge and issued said bonds on the 5th day of November 1875, under the authority conferred upon them by the Act of Assembly, approved March 23d 1865, entitled "An act for a free bridge over the Lackawaxen river at Lock No. 10, on the Delaware and Hudson Canal," the plaintiff is entitled to recover.

If the court shall be of opinion that under these facts the plaintiff cannot recover, that then they find for the defendant, and judgment to be entered in their favor.

The court, Dreher, P. J., entered judgment for the plaintiff on the special verdict (12th assignment), delivering the following opinion :—

"The questions raised upon the special verdict are :—

"1. Whether the indebtedness of a county, the debt of which at the adoption of the present Constitution, exceeded two per centum (but was less than three per centum) upon the assessed value of the taxable property therein, may be increased (the increase being less than two per centum upon such assessed valuation of property) without the assent of the electors of the county ascertained by a public election.

"2. Whether the 8th section of article 9, of the new Constitution, and the Act of the 20th of April 1874, Pamph. L. 65, repealed the special Act of Assembly of the 23d of March 1865, Pamph. L. 650, entitled, 'An act providing for a free bridge over the Lackawaxen river at Lock No. 10 on the Delaware & Hudson Canal.'

" The first section of that act authorizes the Lackawaxen Bridge Company to make a conveyance of all their right, title and interest in the bridge, with the contiguous land and all appurtenances and franchises held by them, to the county of Pike. The second section authorizes the commissioners of the county of Pike, with the written approval of the associate judges of the county, to purchase said bridge for cash, or bonds bearing interest at the rate of six per centum to be paid annually.

" The 8th section of article 9 of the Constitution is as follows: ' The debt of any county, city, borough, township, school district or other municipality or incorporated district, except as herein provided, shall never exceed seven per centum upon the assessed value of the taxable property therein; nor shall any such municipality or district incur any new debt or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of the property, without the assent of the electors thereof at a public election, in such manner as shall be provided by law; but any city, the debt of which now exceeds seven per centum of such assessed valuation, may be authorized by law to increase the same three per centum in the aggregate at any one time upon such valuation.'

" It is contended by the defendant that the term ' new debt ' has reference to counties not indebted, and that such counties may incur a debt amounting to two per centum upon the assessed valuation, without a vote of the electors assenting thereto, and that the phrase ' increase its indebtedness,' has reference to counties having an existing indebtedness, and that such counties cannot make any increase of such indebtedness if the proposed increased and old indebtedness together exceed two per centum of the assessed valuation, without first obtaining the assent of the electors at an election held for that purpose.

" I cannot see any such distinction between the expressions ' incur any new debt ' and ' increase its indebtedness.'' An existing indebtedness is certainly increased by contracting or incurring a new debt, and a new debt may be incurred by a county or an individual already in debt. Suppose a county with an indebtedness of ten thousand dollars should find it necessary to borrow ten thousand dollars to put up a public building and issue bonds therefor; this borrowed ten thousand dollars would certainly be a new debt. It is no part of the old debt. It might be said that the county had increased its indebtedness to the amount of ten thousand dollars, but certainly it would not be said she had increased her debt to the amount of twenty thousand dollars.

" The second clause of the 8th section reads: ' Nor shall any such municipality or district incur any new debt or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property without the assent of the electors

thereof at a public election in such manner as shall be provided by law.'

"Now, according to the argument of the defendant, this clause provides for two classes of counties:—

"1st. Such as have no debt; and they may incur a debt not exceeding two per centum upon the assessed valuation, without a vote of the electors.

"2d. Such counties as are in debt; and they may increase such indebtedness if the existing debt with the increase does not exceed two per centum of such assessed valuation, without a vote of the electors.

["According to the defendant's theory, there is no place in the second clause of the 8th section for that class of counties having an indebtedness exceeding two per centum of the assessed value of property therein. It would be incorrect to say that a county having an indebtedness equal to or in excess of two per centum may increase that indebtedness, but the indebtedness when increased shall not exceed two per centum. We might as well say that a quantity equal to A. may be increased, but such a quantity when increased must not exceed A. It is not a sufficient answer to this to say that as the maximum limit fixed by the first clause is seven per centum, therefore any county not having reached that limit may increase its indebtedness by a vote of the people. The second clause provides for the vote of the taxpayers to be taken in the cases therein mentioned—that is to say, according to defendant's argument, where a county has no debt, and .where there is a debt less than two per centum, and it is proposed to increase it so that the debt and the increase will exceed two per centum.] Tenth assignment.

["I think the county of Pike had the power to purchase the bridge, and issue bonds in payment therefor notwithstanding her indebtedness was in excess of two per centum of the assessed value of taxable property therein, at the time these bonds were issued. Whether these bonds are viewed in the light of a 'new debt,' or an increase of an existing indebtedness, I think they are binding upon the county, and judgment is therefore entered upon the special verdict in favor of the plaintiff.] Eleventh assignment.

"In this opinion I have not referred to the Act of 20th April 1874, thinking it unnecessary to do so, as that act is certainly not more restrictive upon the power of a county to contract indebtedness than the Constitution.

[If the defendant's interpretation of the Constitution is correct, I think it very doubtful whether the power of the county commissioners to purchase the bridge and issue the bonds under the special act of 23d March 1865, was abrogated by the adoption of the new Constitution."] Fourteenth assignment.

[Pike County v. Rowland.]

The defendant took this writ and alleged that the court erred as set forth in the above assignments of error.

*H. M. Seely* and *John Nyce*, for plaintiff in error.—We thought we had evidence of collusion between Rowland and Drake sufficient to make Drake's declarations competent evidence against Rowland; and we proposed by such declarations made just before the actual transaction, to show the corrupt inducement to the transaction.    Only slight evidence of collusion was necessary for this purpose: McDowell *v.* Rissell, 1 Wright 168; Gibbs *v.* Neely, 7 Watts 307; Peterson *v.* Speer, 5 Casey 491.

Hanners did not give his assent as administrator, and he could not give his assent in any other capacity : Lewis *v.* Ewing, 6 Harris 313.    The board of commissioners were not properly convened. They did not meet in pursuance of notice or according to adjournment, and the acts of the two commissioners were void: Act of April 15th 1834, sect. 19, Purd. Dig. 302, pl. 6.    A notice when necessary must, if practicable, be given to every member of a body who has a right to vote : 1 Dillon on Municipal Corp. 320; 2 Kent's Com. 464; McCready *v.* Guardians of the Poor, 9 S. & R. 99; Jefferson County *v.* Slagle, 16 P. F. Smith 202.

The language of the 8th section of article 9 of the Constitution is clearly prohibitory.    We contend that it fixes two per centum of the assessed valuation of taxable property as the limit, beyond which the indebtedness of the county cannot be carried without the assent of the electors first obtained.    The court maintain that this limit is one of increase only, and not of indebtedness; that if the indebtedness of the county be one, two or five per centum of such valuation, not exceeding two per centum of such valuation may be added without requiring the assent of the electors.

We insist that the words "incur any new debt," have reference to a municipality not indebted, and the indebtedness which it can incur, without the assent of the electors, is limited to two per centum ; the words "increase its indebtedness," have reference to a municipality already indebted, and to such the same limit of indebtedness is fixed.

The clause in the Constitution being prohibitory, the Act of 1865 could not be carried into effect, and its operation was suspended until the indebtedness of the county should be so reduced that the purchase of the bridge would not increase the indebtedness beyond two per centum, or until the assent of the electors to such increase had been obtained: Perkins *v.* Slack, 5 Norris 278.

*G. G. Waller* and *J. B. Storm*, for defendant in error.— Whether the assent of Hanners was valid or not we contend is a question which cannot be raised here except by the heirs or stockholders, and neither of them are complaining.

The declarations of Drake were not made in his official capacity or whilst acting in the business of the county. They were no more than the loose declarations of any other citizen: Green *v.* North Buffalo Twp., 6 P. F. Smith 110; Wharton's Ev., 2 vol., sect. 1209. The fact that Geyer did not suppose that any business would come up, except certain things, in the absence of a distinct agreement that nothing else should be done, did not affect the regularity of the meeting. The two commissioners were competent to transact any business for the county. Their session had not closed; no new meeting was held. Notice to Geyer was not necessary, he having left the board in session. The fact that he was opposed to the purchase of the bridge made no difference so long as the other two favored it.

The constitutional provision means that the aggregate of new debts, or of the increase of the indebtedness existing at the time the new Constitution went into effect, must not exceed two per centum. The prohibitions of the Constitution of 1874 are prospective only, and do not repeal local statutes in force at the time of its adoption, and whose provisions are inconsistent therewith: Indiana County *v.* Agricultural Society, 4 Norris 357; Wattson et al. *v.* The Chester & Delaware River Railroad Co., 2 Norris 254.

Mr. Justice TRUNKEY delivered the opinion of the court, June 22d 1880.

The Act of 1834 provides that the corporate powers of a county shall be exercised by the commissioners; that two of them shall form a board for the transaction of business, and when convened in pursuance of notice or according to adjournment shall be competent to perform all duties appertaining to the office. To these officers are intrusted the care and management of county business and property. The voice of the inhabitants is not directly heard in the levying of taxes, making of contracts or expenditure of money—their power is only felt at the election of commissioners. The question presented in the fourth and fifth assignments is, may two of the commissioners convene and lawfully transact business requiring deliberation, not according to adjournment, and without notice to or knowledge of the other? This concerns every citizen of the county, as well as each member of the board.

By law the affairs of the county are administered by three representatives. Absent members, equally with those who are present, are bound by whatever is lawfully done at a regular or stated meeting or any regular adjourned meeting. If the meeting be a special one, the general rule is that notice is necessary, and must be personally served, if practicable, upon every member entitled to be present, so that each one may be afforded an opportunity to participate and vote. Such notice is essential to the power of the

[Pike County v. Rowland.]

board to do any deliberative act which shall bind the corporation. If all have notice, two shall form the board, and their acts bind the absent as if it were a stated or adjourned meeting. Notice may be dispensed with by the presence and consent of all; and if one has quit the municipality, and has no family or house within its limits, notice to him is unnecessary: Dillon on Mun. Corp., sects. 200, 201, 223, 224. All authorities seem to agree as to the general rule, unless there is a modification in the charter or statute. It applies alike to public and private corporations. Our statute, which declares that a majority shall form a board when duly convened in pursuance of notice or adjournment, is an enactment of the well-settled rule without adding to or taking from.

Jefferson County v. Slagle, 16 P. F. Smith 202, does not support the position that two of the commissioners may meet, without the knowledge of the other, and bind the county by contract. This point was not raised nor discussed in the opinion. It was ruled that the board could transact business anywhere in the county. No proof was adduced that two acted without consent of the other; and, in the absence of evidence, it is presumed the officers did their duty: Downing v. Rugar, 21 Wend. 178.

In absence of a different provision in the charter or by-laws of a corporation, a special meeting of the trustees must be called by giving personal notice to each member of the board. A provision that a majority shall form a board for the transaction of business does not change the rule: Harding v. Vandewater, 40 Cal. 77. A meeting of stockholders regularly warned is competent to do any act within their chartered powers by a bare majority; yet, if not thus warned, their act would be void. If no mode of warning be prescribed in their charter or by-laws, personal notice may be given: Stow v. Wyse, 7 Conn. 214. When the statute vested the election of treasurer for the county and city of Dublin in the "board of magistrates of the county of the said city," and an election was held in the absence of one of the magistrates who had not been notified, it was held that the election was invalid: Smyth v. Darley, 2 H. L. Cas. 789. See The People v. Batchelor, 22 N. Y. 128.

If two of the commissioners, without notice to or knowledge of the other, can form a board for transaction of business, the statutory direction for notice is futile. To say they have convened in pursuance of notice is nonsense, unless we speak of notice to the two by a person who desires business of interest to himself to be done in the other's absence. Such meeting savors of conspiracy. A designing man could observe the superiority of an able and upright commissioner over his weaker fellows, and take care to convene the two weaker ones for consummation of his purpose, if notice to all is not essential. Superior numbers often yield to superior weight, and sometimes the corrupt quail in presence of an

honest man.    Just in proportion as a clandestine meeting of two commissioners for transaction of business would be dangerous, is it to the interest of the inhabitants of the county that all three should have notice and opportunity to be present at every special meeting of the board.    The opinions, reasoning, perhaps protest, of the one may advantage the county.    He may prevent hasty and inconsiderate action.    Had Geyer been present on the evening the bonds were signed, he might have discussed the matter with Rosecrans till Drake's pendulous mind had swung the other way, and thereby saved the county from the Rowland contract.    Be this as it may, Geyer ought to have had opportunity to consult, advise, and, if need be, protest.    The defendant's first point should have been affirmed.    It is scarcely necessary to remark that no question is raised in this record respecting the validity of bonds or securities, appearing on their face to have been properly issued by the county commissioners, which have passed into the hands of strangers to the original transaction who are innocent holders for value.

We think the learned judge of the Common Pleas rightly determined the questions raised by the special verdict.    Sect. 8, art. 9, of the Constitution is as follows:. " The debt of any county, city, borough, township, school district, or other municipality or incorporated district, except as herein provided, shall never exceed seven per centum upon the assessed value of the taxable property therein, nor shall any such municipality or district incur any new debt, or increase its indebtedness to an amount exceeding two per centum upon such assessed valuation of property, without the assent of the electors thereof at a public election in such manner as shall be provided by law ; but any city, the debt of which now exceeds seven per centum of such assessed valuation, may be authorized by law to increase the same three per centum, in the aggregate at any one time, upon such valuation."    In the constitutional convention the three divisions of this section were discussed, and the second was explained thus : " The second division of the amendment provides that no new debt, or any increase of existing debt exceeding two per cent., shall ever be authorized by any municipality without the express assent of the electors of the municipality by a public vote."    This seems to have been the understanding of the convention : 6 Debates 143.    The clause was doubtless so understood by the people at its adoption.    In Wheeler *v.* Philadelphia, 27 P. F. Smith 338, a case soon after the adoption, where it was necessary to give a construction of the third clause of the section, relating to cities, it was remarked of the preceding : " The municipal authorities may increase the debt from time to time until two per centum has been added, provided the original debt, with the increase, does not exceed seven per centum. After the two per centum has been added, there can be no further

[Pike County v. Rowland.]

increase without the vote of the people." Neither the debates,
nor supposed views of the people, nor the dictum of this court,
nor all combined, can set aside the plain meaning of a constitu-
tional provision ; but if the sense of a clause be doubtful, the con-
temporaneous understanding is material. In strictness, the words
may mean as contended by defendant, but the context seems to
make it clear that the true sense of the clause is a prohibition of a
new debt, or increase of existing debt, exceeding two per centum
of the assessed valuation, without a public vote. Where the debt
is less than seven per centum, it was not intended that public
officers of municipalities should be deprived of power to make
immediate improvements and repairs of public property, which
might become necessary, provided they keep within the limit of
two per centum of the valuation.

The third assignment cannot be sustained. Hanners, as admin-
istrator, had right to control or sell the stock. He signed the
writing giving assent of the stockholders, and that was sufficient,
as respects third persons, whether he then held it as administrator,
or it had vested in him as owner.

We discover no error in the rulings set forth in the remaining
assignments.

Judgment reversed, and *venire facias de novo* awarded