Ward, Appellant, *v.* Pittsburgh et al.

Argued January 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Louis Vaira,* for appellant.

*William F. Beatty,* for appellee.

*Thos. M. Benner,* for amicus curiæ.

OPINION BY MR. JUSTICE BARNES, March 30, 1936:

This case was argued before us on January 30, 1936. Owing to the urgency of the case, and the necessity of an immediate determination of the questions involved, an order affirming the decree of the court below dismissing the bill was handed down the following day. We now state our reasons for the order so entered.

The plaintiff, a resident taxpayer of the City of Pittsburgh, seeks to enjoin the city, its mayor and the city comptroller from borrowing, pursuant to an ordinance passed by the city council, the sum of $500,000 upon short-term promissory notes of the city. It is contended that the city council has already exceeded its capacity, as limited by the Constitution of the Commonwealth, to borrow without a vote of the people, and that for this reason the ordinance is unconstitutional and void. After a hearing on the bill and the answers filed by the defendants, the court below found that the proposed increase of indebtedness is within the borrowing power of the

city council. It dismissed the bill, and from the decree entered the taxpayer has appealed.

The constitutional provision invoked is section 8, of article IX,* which limits the amount which a municipality may borrow without a vote of the electors to two per centum of the assessed value of its taxable property. However, a municipality with the assent of the voters is permitted to borrow up to seven per centum of the assessed values. The two per centum of indebtedness which the governing body of a municipality may thus incur without a popular vote, is here referred to as the councilmanic debt.

The bill avers that the city council, by an ordinance of September 23, 1935, provided for an increase in the city's indebtedness to the extent of $500,000 by the issuance of promissory notes payable in three years, for the purpose of providing "funds to pay for the construction of general public improvements within the city, including the materials necessary therefor, and the preliminary expenses in connection therewith, and to pay engineering, architectural and other expenses incurred or to be incurred in connection with contracts for municipal improvements." The ordinance is based upon the authority conferred upon municipalities by the Act of July 12, 1935, P. L. 722, to borrow upon short-term notes and to refund the same for the purpose of constructing municipal improvements. It is further averred in the bill that this increase in indebtedness is created without the consent of the electors, and that the proposed notes are ille-

---

* The applicable portion of this section of the Constitution reads as follows: "The debt of any county, city, borough, township, school district, or other municipality or incorporated district . . . shall never exceed seven (7) per centum upon the assessed value of the taxable property therein, . . . nor shall any such municipality or district incur any new debt, or increase its indebtedness to an amount exceeding two (2) per centum upon such assessed valuation of property, without the consent of the electors thereof at a public election in such manner as shall be provided by law."

gal and void for a number of reasons, of which the only one now pressed by appellant is that the ordinance increases the so-called councilmanic indebtedness beyond the two per cent limit fixed by the state Constitution.

No answer was filed on behalf of the city. The individual defendants filed separate answers to the bill; that filed by the mayor supports, for the most part, the averments of the bill, and cites additional reasons for the invalidity of the ordinance. The answer filed by the city comptroller, on the other hand, upholds the ordinance, and specifically avers that the issuance of the notes in question will not increase the councilmanic debt beyond the two per centum limit fixed by the Constitution; that in addition to the loan in question the city council has an *unused* borrowing margin of $5,000,000, as appears by a statement of the city debt attached to the comptroller's answer. This result is reached by deducting from the existing councilmanic debt two-thirds of all delinquent taxes oustanding.

The precise question involved in this appeal is whether it is proper to treat any portion of delinquent taxes as a deductible asset in computing councilmanic indebtedness.

According to the debt statement of the city comptroller, the accuracy of which is not disputed, the total assessed valuation of taxable property in Pittsburgh is $1,-173,280,320, two per centum of which is $23,465,606.40—the amount which the city council may constitutionally borrow without a vote of the electors. However, the statement shows that city council has already borrowed $26,367,958.59. But, from this amount the comptroller has deducted $8,177,304.60, representing two-thirds of all outstanding delinquent taxes. This deduction reduces the councilmanic debt to $18,190,653.99, a figure well within its borrowing power. It is apparent that as the debt is reduced, the borrowing capacity is increased.

As showing that the total indebtedness of the city is within the seven per centum limit, the city has a borrow-

ing capacity of $82,129,622.40, of which it has utilized only $53,693,835.19, after giving effect to the present loan and the deduction of delinquent taxes.

The city comptroller asserts that two-thirds of the delinquent taxes are certain to be collected within a year. He contends that this proportion represents a quick liquid asset available to the city for the discharge of councilmanic indebtedness. In support of his position, he testified at the hearing that the records of the city show that prior to 1930, the city collected from eighty to ninety-three per centum of delinquent taxes; that in 1930, the rate of collection was the lowest ever experienced and in that year it was seventy-four per centum. According to his estimate, the payments of delinquent taxes during the present year will exceed eighty per centum of the total outstanding. Therefore, he maintains that the two-thirds proportion, though fixed arbitrarily, represents a conservative and realizable estimate. The court below found that this proportion of such taxes was a reasonable estimate and properly deductible as an asset in ascertaining councilmanic debt-incurring capacity.

Questions arising under section 8, of article IX, of the Constitution, have been before us many times. We have uniformly held that any municipal borrowing in excess of the limits there imposed is invalid (*Millerstown v. Frederick*, 114 Pa. 435; *Brooke v. Phila.*, 162 Pa. 123; *Pepper v. Phila.*, 181 Pa. 566; *Bell v. Waynesboro*, 195 Pa. 299; *O'Malley v. Olyphant*, 198 Pa. 525; *Hoffman v. Kline*, 300 Pa. 485) ; and may be enjoined by a taxpayer: *Luburg's App.*, 1 Monaghan 329, 23 W. N. C. 454; *Wilkes-Barre's App.*, 109 Pa. 554; *Pepper v. Phila.*, supra; *Houston v. Lancaster*, 191 Pa. 143. It is settled that the power of the governing body of a municipality to create debt without the consent of the electors is exhausted when the aggregate debt so incurred amounts to two per centum of the assessed valuation of taxable property: *Bell v. Waynesboro*, supra; *Hoffman*

*v. Kline,* supra; *Wheeler v. Phila.,* 77 Pa. 338; *Pike Co. v. Rowland,* 94 Pa. 238; *Pepper v. Phila.,* supra; *Houston v. Lancaster,* supra.

In passing upon the question before us we are governed by the Act of April 20, 1874, P. L. 65, which defines the constitutional provisions limiting municipal indebtedness. This act was passed at the first session of the legislature after the adoption of our present state Constitution, and was held constitutional in *Elliot v. Phila.,* 229 Pa. 215. The term "indebtedness" is defined in section 5 of the Act of 1874, as including "all and all manner of debt, as well floating as funded, of the said municipality; and the net amount of such indebtedness shall be ascertained by deducting from the gross amount thereof, the moneys in the treasury, *all outstanding solvent debts,* and all revenues applicable within one year to the payment of the same."

We have defined in a number of cases the term "outstanding solvent debts" as used in the statute. For example, in *McGuire v. Phila. (No. 1),* 245 Pa. 287, 293, we said: "Outstanding solvent debts, within the meaning of the Act of 1874, which a municipality may deduct from its gross indebtedness in ascertaining its borrowing capacity, are debts due to it directly, payment of which it can enforce as one of its quick assets for the liquidation of any of its obligations." To the same effect in *Elliot v. Phila.,* supra, we said, at page 229: "It seems to us that the method provided for ascertaining the net indebtedness of municipalities by this Act [of 1874] is both reasonable and sensible . . . Of course, the municipal authorities cannot arbitrarily say that every claim of the city is an outstanding solvent debt, or that revenues necessary to pay current expenses could be set apart for this purpose, but where there are bona fide outstanding debts due the city, and revenues not necessary to meet current expenses are available for the payment of indebtedness within the year, such deductions can be made under the provisions of the act in ascertaining the

420

net indebtedness." See also *Halpin v. Rochester,* 281 Pa. 109, where Mr. Justice SADLER, reviewing the decisions upon this point affirmed these principles.

These cases dealing with the computation of municipal indebtedness and borrowing power show clearly what debts due to a municipality are to be deducted in determining its net indebtedness. Thus in *McGuire v. Phila.,* supra, a city obligation assumed by a school district was held not deductible, because it did not appear when or how the indebtedness incurred by the city was to be paid by the school district. On the other hand, in *Schuldice v. Pittsburgh,* 251 Pa. 28, 35, we held that "undisputed liens against properties specially benefited by the improvement of streets and the construction of sewers . . . may fairly be regarded as solvent debts due and owing to the city, and as such they are to be considered as a proper offset to the floating indebtedness incurred without the assent of the electors." The reasons, as we said, for so regarding such liens are that they are well secured by property which can be sold to enforce payment, that ninety per centum of such claims are collectible within one year's time, and that the city had an additional remedy in assumpsit against the property owner to collect such a claim. Such municipal assessments, however, cannot be considered an offset against the city's debt until represented by undisputed liens actually filed against the property: *McAnulty v. Pittsburgh,* 284 Pa. 304. Other more clearly deductible items are cash on hand, bonds and other municipal evidences of indebtedness held in sinking funds: *Southmont v. Upper Yoder Twp.,* 284 Pa. 287; *Brooke v. Phila.,* supra; *Bruce v. Pittsburgh,* 166 Pa. 152. These cases point out that the "solvent debts" which under the Act of 1874 are to be deducted in calculating borrowing capacity, are those obligations due and owing to the city which can promptly be realized and enforced.

Applying this test to the facts presented in this case, there can be no doubt that at least two-thirds of the de-

linquent taxes are deductible. Upon this record we are bound to accept as a fact that there will be prompt collection of this proportion of delinquent taxes as claimed by the comptroller. The reason given in *Schuldice v. Pittsburgh,* supra, for regarding liens based on benefit assessments as "solvent debts" apply with equal force to delinquent taxes; here, as there, the taxes are soundly secured upon property which the city may sell to enforce its claim, and over three-quarters of such taxes outstanding are paid off each year. Indeed, delinquent taxes are in an even better position than assessment benefit liens; the filing and enforcement of such claims are regulated by the Act of May 16, 1923, P. L. 207, as amended by the Act of April 30, 1929, P. L. 902. Section 2 of the act specifically provides that taxes shall be a first lien on the property assessed, and section 3 provides that other municipal claims shall have priority in satisfaction over all other charges against the property, save only the costs of sale, *and taxes.* Subsequent provisions of the act make no distinction between the manner of enforcement of taxes and that of other municipal claims. Under this act it would seem that taxes are entitled to priority over all other municipal liens. Since it is settled, by *Schuldice v. Pittsburgh,* supra, that undisputed liens filed for municipal improvements are "solvent debts" to be deducted from a municipality's indebtedness, it must follow that delinquent taxes are also deductible in such proportion as they are certain to be collected.

An examination of the printed records in three cases which have been before this court *(Bell v. Waynesboro,* supra; *Halpin v. Rochester,* supra; *Elliot v. Phila.,* supra) discloses that the delinquent taxes outstanding were deducted in computing the net indebtedness of the municipalities. While these cases cannot be deemed authorities for our present conclusion, as no question was raised in any of them as to the validity of this practice, yet they indicate that a construction has been given to

the term "solvent debts" which, after so many years, we should be loath to disturb.

One limitation upon the use of delinquent taxes as an asset deductible in computing borrowing power should be observed. Funds used as current revenues for the payment of current expenses may not be so treated. As we said in *Elliot v. Phila.*, supra, "Of course, the municipal authorities cannot arbitrarily say that every claim of the city is an outstanding solvent debt, *or that revenues necessary to pay current expenses could be set apart for this purpose,* but where there are bona fide outstanding debts due the city, and *revenues not necessary to meet current expenses* are available for the payment of indebtedness within the year, such deductions can be made." Current expenses, covered by current revenues are not considered as debts of the municipality: *Wade v. Oakmont,* 165 Pa. 479; *Addyston P. & S. Co. v. Corry,* 197 Pa. 41; *Erie's App.,* 91 Pa. 398. If then, as is sometimes done, the amount of delinquent taxes which the municipality expects to collect within the year are treated as current revenues, for the payment of current expenses, they cannot properly also be deducted from the indebtedness of the city. Such a practice would, of course, be using the delinquent taxes as an asset twice.

The legislature by the recent Act of May 18, 1933, P. L. 813, expressly recognized the value of delinquent taxes as a municipal asset by authorizing the issuance by a municipality of bonds to the extent of eighty per centum of its outstanding uncollected taxes. While the notes here in question are not to be issued under the authority of that act, which is therefore not directly applicable, the statute supports, in an indirect way, our conclusion that a proper proportion of such taxes should avail the municipality as a deductible asset in fixing its borrowing power.

The mayor, defendant in the case, has attacked the ordinance on the further ground that it violates the Act of 1935, under the authority of which city council enacted

the ordinance in question. The act provides for the issuance of notes such as were authorized by the ordinance, "to pay the engineering, architectural and other expenses incurred, or *to be incurred* in connection with contracts for municipal improvements; and to pay for the construction of public improvements within the city and the preliminary expenses in connection therewith." It will be noted that the ordinance embodies these authorizations in exact terms, yet this defendant contends that the act contemplates that notes shall be issued only for the payment of expenses already incurred. He argues that, as no contracts have yet been entered into, there are no debts incurred for which money may be borrowed under the authority of the act. This argument refutes itself. The act expressly states that money may be borrowed to pay expenses *"to be incurred"* in connection with contracts for municipal improvements. This language contemplates that the moneys borrowed under the act are to be used for future obligations, and we cannot disregard the plain import of the statute and require that definite engagements and contracts be entered into by a municipality prior to taking advantage of its provisions.

For the reasons above stated, we entered our decree affirming the decree of the court below.