Argued December 7; demurrer to writ of mandamus sustained
December 23, 1938; rehearing denied March 21, 1939

# STATE ex rel. UMATILLA COUNTY et al. *v.* DAVIS

(85 P. (2d) 379, 88 P. (2d) 314)

In Banc.

*A. C. McIntyre*, District Attorney, and *John F. Kilkenny*, both of Pendleton, for petitioners.

*Charles Z. Randall*, of Pendleton (Randall & Perry, of Pendleton, on the brief), for defendant.

LUSK, J. This is an original proceeding in mandamus brought on the relation of Umatilla County and the members of the county court to compel D. W. Davis, county assessor, to enter and apportion upon the assessment rolls of the county the taxes as levied for the year 1939 by the county court of Umatilla county, Oregon, including an item of $20,200 for the construction of a new courthouse. The case is before us on demurrer to the writ.

The facts, in so far as it is necessary to state them, are as follows: The county court, acting under the authority of Ch. III, of Title 27, §§ 27-310, et seq., Oregon Code 1930, determined to build a new county courthouse to cost $300,000 and to provide funds for such purpose in the following manner: A tax levy for the year 1939 in the sum of $20,200, the acceptance of a grant from the Federal government of $135,000, and by the transfer of funds from uncollected and delinquent taxes of the county for the years 1930 to 1937, inclusive, from the general fund of the county in the sum of approximately $144,800.

In the county budget for the year 1939, under Miscellaneous Department, is an item "Construction of Court House, $165,000.00"; under Estimated Receipts appears "Delinquent Taxes prior to 1938 tax roll, $144,800.00"; and under Recapitulation, "Construction of New Court House (General County Fund), $20,200.00."

The county is free of debt; the tax levy for the year 1938 was $297,869.50; the tax levy for the year 1939 is $304,312.79; and the assessed value of the property in Umatilla county is in excess of $45,500,000.

It is proposed to issue warrants in the amount of the delinquent taxes, and the validity of the proposed warrants is a principal question raised and one, the

decision of which, in the view we take, will dispose of the case. A doubt might be entertained whether this question rises fairly on the record, yet, inasmuch as the case was presented on the theory that it is here and both sides are desirous of having it determined we shall proceed to do so.

The precise question is whether an issue of warrants in the sum of $144,800 will constitute an indebtedness of the county in that amount, thus contravening Article XI, § 10, of the State Constitution, which provides:

"No county shall create any debt or liabilities which shall singly or in the aggregate, with previous debts or liabilities, exceed the sum of $5,000, except to suppress insurrection or repel invasion or to build or maintain permanent roads within the county * * *"

It is the position of the relators that these uncollected and delinquent taxes are to be considered as money in the treasury of the county, and, being in the general fund and not appropriated for any other purpose than the building of a county courthouse, warrants issued in anticipation of the collection of such taxes are not to be treated as an indebtedness of the county within the intent and purpose of the constitutional limitation.

■ This court has given its approval to the generally recognized rule that after a levy is made the payment of taxes is regarded as a legal certainty, and for the purpose of determining whether an expenditure will exceed the debt limit of a county it will be assumed that the tax has been collected: *Coos County v. Oddy,* 156 Or. 546, 552 (68 P. (2d) 1064); *Kneeland v. Multnomah County,* 139 Or. 356, 362 (10 P. (2d) 342); *State ex rel. Perce v. Slusher,* 117 Or. 498, 500 (244 P. 540, 58 A. L. R. 114); *State ex rel. v. Stannard,* 84 Or. 450 (165 P.

566, 571, L. R. A. 1917F, 215) ; *Municipal Security Company v. Baker County,* 33 Or. 338, 347 (54 P. 174). Various grounds have been stated by the courts as the basis for the rule (see 92 A. L. R.), but the theory adopted by this court is that the collection of the tax, once the levy has been made, is a legal certainty.

■ Gray, in his work, ''Limitations of Taxing Power and Public Indebtedness'' 1062, § 2071, says:

''Where a city has money in its treasury, or is in receipt of annual revenues which may properly be devoted to its strictly current expenses, it ought not to be regarded as an increase of its debts to contract for some ordinary article or labor, to be paid for after the article is furnished, or the work is done. Constitutional debt limits are intended to make cities and states pay as they go, but they are not intended to force them to pay *in advance.* When a city agrees at the beginning of a year to pay a man so much for removing the garbage during that year, a debt is created the moment the man removes a can of garbage. When a stationer supplies a city with writing paper a debt is created unless the city officers pay cash on delivery for the paper. To this extent, at least, the cases which say that a city may contract debts for current expenses payable out of current revenues without regard to the limit, are sound.''

Examination of the Oregon decisions will disclose that the doctrine has been applied only to cases of current indebtedness payable from current taxes, and the numerous decisions cited in the annotation in 92 A. L. R., pp. 1299 et seq., are of like character. They conform to the rule stated by Gray, *ibid,* as follows:

''The power of the municipality in this respect, however, ought to be somewhat limited as to time, and as the ordinary way of estimating revenues and expenses and levying taxes is *by the year,* the municipal power to incur debts of this purely current class, regardless of the constitutional limit, should only extend far enough

to allow the incurrence of such debts for services rendered or supplies furnished *in the year in which the debt is incurred*, and for the payment of which the ordinary revenues of that year are sufficient.''

Some of the states, as pointed out by Gray in § 2077 of his work, contain limitations in their constitutions substantially in accord with the rule which he lays down. To these may be added the state of Washington, which has adopted a statutory amendment to like effect. Rem. Comp. Stat., § 5606; see *Tabb v. Funk*, 170 Wash. 545 (17 P. (2d) 18).

We have no intention in this case of announcing a departure from past decisions, but it is pertinent in connection with the question for decision to quote what is said by the commentator at page 1306 of 92 A. L. R.:

''The experience of states, counties, and municipalities in recent years, when financial reverses have rendered many taxpayers unable to pay, and delinquencies have become the rule rather than the exception in many parts of the country, leads to the suggestion that the view might be taken that when, as in periods of prolonged depression, the fiscal authorities are or should be convinced that it is impossible to collect the full amount of the tax revenues, or even such a percentage thereof that for practical purposes, it can be said the taxes are all collected, it is not within their power to appropriate and issue warrants against uncollected revenues if the amount of such warrants, added to existing indebtedness, amounts to a sum in excess of the constitutional or statutory limitation of indebtedness. One court has said that it would appear that if an obligation to meet which an appropriation in anticipation of revenue is made is not to be considered as creating an indebtedness, there must be a reasonable expectation of the receipt of sufficient revenues for payment.'' Citing *Austin Bros. v. Patton*, 288 S. W. 182.

This court has never had occasion to determine whether the rule as to current taxes may also be applied

to delinquent taxes nor whether it should be extended to an expenditure such as that here involved. In *Municipal Security Company v. Baker County*, supra, where it was claimed and held that the county had exceeded its debt limitation, the plaintiff urged that among the assets of the county to be considered in determining the extent of its indebtedness was the sum of $2,618 delinquent taxes. The court left the question undetermined for the reason that, even though all the claimed items were properly to be counted as assets, it still remained true that the $5,000 debt limit had been passed. In discussing the subject the court cited the cases of *Fenton v. Blair*, 11 Utah 78 (39 P. 485), and *State ex rel. Barton v. Hopkins*, 14 Wash. 59 (44 P. 134), where it was held that the same principle applies to delinquent taxes as to taxes assessed for county purposes upon the tax roll for the coming year. But referring to the cases of *Grant v. City of Davenport*, 36 Iowa 396, and *City of Council Bluffs v. Stewart*, 51 Iowa 385 (1 N. W. 628), the court, speaking through Mr. Justice WOLVERTON, said:

"These cases recognize the authority of the municipalities to anticipate current revenues in the ordinary expenditures incident to the promotion of their purposes, but none other; and they seem more consistent with the policy adopted by this court in considering such ordinary expenses as not within the constitutional inhibition against the accumulation of indebtedness than the other cases cited."

The question came before the Supreme Court of Oklahoma in *Mannsville Consolidated School District No. 7 v. Williamson*, 174 Okla. 18 (49 P. (2d) 749). The constitution of Oklahoma provided that no municipal corporation or subdivision of the state should be allowed to become indebted "in any manner, or for any

purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof'', and where such assent was required, that no indebtedness should be incurred ''to an amount including existing indebtedness, in the aggregate exceeding five per centum of the valuation of the taxable property therein.'' It was further provided that where the corporation incurred an indebtedness requiring the assent of the voters it must ''provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund'', etc. The case involved the validity of an issue of bonds by the school district, and on the question of whether or not delinquent taxes were to be considered as assets of the school district in determining the amount of its indebtedness, the court said:

''An examination of the decisions of other states having similar constitutional provisions with reference to debt limitations discloses a sharp conflict between them. The better reasoned cases hold that only cash on hand and available assets and resources readily convertible into cash should be considered deductible assets and subtracted from the outstanding indebtedness. To us this seems the better rule. Delinquent taxes are not readily convertible into cash. Nor do our statutes under which the collection of delinquent taxes can be enforced insure the collection of such taxes in cash. Property sold to the county at the annual tax sales, for lack of individual purchasers, may be resold under our statute; but if at such sale it cannot be sold to individual purchasers, the county becomes the purchaser and owner in fee of the property sold for delinquent taxes, and the taxes are canceled. Such property does not become assets of the county, or of the school district in which the property may be located, that may be considered in determining the net indebtedness of such county or any municipal subdivision thereof. Nor

are the proceeds of sale of such property, if and when sold by the county, allocable to the payment of the warrant indebtedness of the school district or other municipal subdivision of the county.

"School districts and other municipal and political divisions of the state should pursue a sound business policy in their fiscal management. To consider as assets delinquent taxes which are not only not readily convertible into cash but are improbable of collection violates that policy, and in our opinion violates the laws of this state."

■ Notwithstanding the use by this court of expressions such as that "the revenues of the county in the process of collection are treated as though they were actually in the treasury," (*Coos County v. Oddy,* supra) we are of the opinion that the county may not, without violating both the letter and the spirit of the debt limitation imposed on it by the constitution, issue warrants for the sum of $144,800 for the purpose of helping to finance the construction of a courthouse, even though it is now free of indebtedness and there are owing to it more than $219,362.61 in delinquent taxes.

■ As applied to the facts of the instant case such dicta are but a legal fiction. The rule as to current taxes is based on the reasonable probability that the greater part of such taxes will be paid during the current year, and it may be said to be a rule of necessity because, as a practical matter, the municipality could not function on any other basis as far as its ordinary expenses are concerned. But it cannot be said that it is reasonably probable or certain that $144,800 of uncollected taxes, delinquent over a period of more than eight years, will be paid in the year 1939. It cannot even be assumed that all these delinquent taxes will ever be paid, because we know judicially that numerous parcels of land have been in the past, and will be in the future, sold

for taxes and bought in by the county. When such sales are made, as the Oklahoma court said in the Mannsville School District case, *supra*, "the property does not become assets of the county that may be considered in determining its net indebtedness."

Speaking to this subject, the Supreme Court of Iowa said in *French v. City of Burlington*, 42 Iowa 614:

"Up to the time of the annual tax sale, these taxes should be regarded as available assets. But after that time we are of opinion and so hold, the burden is on the city to show that such taxes have any value before they should be counted or deemed available assets for the purpose of meeting a proposed indebtedness."

The legislature has taken cognizance of the difficulties experienced in collecting delinquent taxes. By § 3 of Ch. 96, Laws of 1937, it is provided:

"Beginning with the year 1936 and in each year thereafter, interest and penalties shall be waived on payment of delinquent taxes of the year 1934 or of any prior year, but not where such payment is less than one-quarter of the taxes of the earliest year of delinquency; provided, as conditions precedent to any such waiver of interest and penalties, that current taxes on the property shall be paid in full within the calendar year in which they become due and payable and, also, that the payment on such delinquent taxes shall be made within the same calendar year."

■ Thus, appreciating the embarrassments of hard-pressed taxpayers during these recent years of economic depression, the legislature, in order to encourage the payment of current taxes, has granted a waiver of interest and penalties on delinquent taxes provided the current taxes are paid, together with one quarter of the taxes of the earliest year of delinquency. It is a reasonable assumption, if not a certitude, that many

delinquent taxpayers will avail themselves of the benefits of this act and will pay only one quarter annually of the amount of the taxes of the earliest year of delinquency, thus postponing for years to come the final liquidation of their indebtedness to the county. In this situation, to hold that these delinquent taxes are to be considered as money in the treasury, as assets of the county, which may be deducted from the total indebtedness for the purpose of determining whether the constitutional limit of debt will be passed by the proposed issue of warrants, would be to blind ourselves to the facts and to permit a mere legal formula to prevail over actualities. ''Municipal corporations should not be permitted to anticipate their revenue to such an extent as to impair the force or nullify the spirit of the constitutional provision limiting indebtedness.'' 44 C. J., Municipal Corporations, 1132, § 4066.

█ As the authorities which we have cited show, the rule permitting anticipation of taxes in process of collection is limited to the ordinary expenses of the municipality. Nothwithstanding that the erection of courthouses is included by § 28-1004, Oregon Code 1930, in the grant to the county court of authority and powers pertaining to county commissioners to transact county business, the building of a new courthouse is not an ordinary county expense. This was ruled in the case of *Obenchain v. Daggett*, 68 Or. 374 (137 P. 212), where the court held that the building of a courthouse is not a county purpose within the meaning and intent of § 3662, L. O. L., now § 69-602, Oregon Code 1930, which provision then read:

''For the purpose of raising revenues for county purposes, the County Court for each county in the state shall, in its January term in each year, levy a tax upon all taxable property in its county, which tax will be

sufficient in its amount to defray the expenses of the county."

On the contrary it was held to be an extraordinary expense embraced in the terms of § 3663, L. O. L., now § 69-603, Oregon Code 1930, which read at the time:

"The County Court shall, at its January term in each year, levy any other taxes which by law the county or County Court or board of county commissioners is required to levy, and any other taxes which it may determine to levy and which by law it is permitted to levy."

The force of this decision has been in no way impaired, but rather emphasized, by the enactment in 1923 of the statute now codified as §§ 27-301, et seq., Oregon Code 1930, and amended by Ch. 331, General Laws of Oregon 1937, under which the county court acted in this case. These sections providing for a public hearing on the proposal to building a new courthouse, the right of the voters to present petitions asking that the question of making the levy or otherwise providing funds, or the location of the proposed site, be submitted to a vote of the people, and the right to propose the selection of a different site and that that question be submitted to the vote of the people—all are provisions indicating the legislative view that such expenditure is unusual and extraordinary in its nature—or, as said in *Obenchain v. Daggett*, supra, "occurring only once perhaps in a generation".

It must be borne in mind that this is not a case where a special fund is to be created out of the delinquent taxes to be devoted exclusively to the proposed purpose, such as is suggested in the Obenchain case as a means of providing funds for building a courthouse. On the contrary, the delinquent taxes, when paid, will become part of the general funds of the county avail-

able for use for any county purpose, and the warrants, if issued, will become general obligations of the county.

We hold, after giving the matter such consideration as time and the necessity of an early decision have permitted, that, with respect to the question of whether or not a county has exceeded the limitation of indebtedness prescribed by the constitution of the state, delinquent taxes are without the scope of the legal presumption that a tax levied is a tax collected, at least where it is sought to invoke that principle, not with reference to the usual and ordinary current expenses of the county, but with reference to an extraordinary expenditure, and incidentally one of considerable magnitude, such as the building of a county courthouse. See *McNeal v. City of Waco*, 89 Tex. 83, 33 S. W. 322; *Grant v. City of Davenport*, supra.

The annual report of the state tax commission for the year 1937 discloses that on December 31st of that year tax delinquencies in this state amounted to the sum of $40,775,152.39. If the proposed action by Umatilla County should be sanctioned, then, of course, all the other counties and political subdivisions in the state could do likewise, and probably many of them would, and the result would be practical nullification of debt-limiting provisions of the constitution, statutes and city charters. This court knows the need of a new courthouse in Umatilla county and regrets the necessity of announcing this decision. But our view of the law leaves no other course open to us.

From the foregoing statement of our views it follows that the demurrer to the alternative writ must be sustained, and it is so ordered.

BEAN, C. J., and BAILEY, RAND, ROSSMAN, KELLY, and BELT, JJ., concur.

Petition for rehearing denied March 21, 1939

On Petition for Rehearing

(88 P. (2d) 314)

*A. C. McIntyre,* District Attorney, and *John F. Kilkenny,* both of Pendleton, on the brief), for appellant.

*Charles Z. Randall,* of Pendleton (Randall & Perry, of Pendleton, on the brief), for respondent.

*Pendergrass & Zollinger* and *Platt, Henderson, Warner & Cram,* all of Portland (Robert Treat Platt, of Portland, of counsel), amici curiae.

LUSK, J.  A petition for rehearing has been filed, supported by briefs of counsel for the petitioners and counsel appearing *amici curiae* pursuant to leave of court.

Emphasis is laid upon the case of *State ex rel. Barton v. Hopkins,* 14 Wash. 59, 44 P. 134 (cited in our former opinion), which this court expressly declined to follow in *Municipal Security Company v. Baker County,* 33 Or. 338, 54 P. 174. The reasoning of the Washington court is as follows: Taxes of the current year have been treated by the courts as a part of the cash assets of the county for the reason that in legal contemplation their collection is certain; this is because the property is liable for the tax and can be sold if the tax is not paid.  But the same thing is true of delinquent taxes, which are a lien against the property until it is sold. Hence, the dryly logical conclusion that delinquent taxes, no matter in what amount or for how many years past due or what the character of the proposed expenditure, are to be deemed assets of the county in determining whether a constitutional limitation on indebtedness has been passed.

The Washington court thereafter found it necessary to abandon the logic of its own decision, for in *Seymour v. Ellensburg*, 81 Wash. 365, 142 P. 875, it declined to follow the sweeping doctrine of the Hopkins case. In the Ellensburg case, taxes of the city, delinquent more than twenty years, were attempted to be treated as assets. The court had shortly before held, in a suit by a taxpayer to restrain the collection of alleged delinquent personal property taxes, that there is a presumption of fact that after six years personal property taxes have been paid: *Graves v. Stone*, 76 Wash. 88, 135 P. 810 Ann. Cas. 1915 D, 182. Apparently to avoid *reductio ad absurdum* the court decided that this same rule applied to real property taxes, the payment of which must be presumed after six years, and consequently that such taxes may not be deemed assets of the municipality. If we are to follow the general doctrine of the Washington court on this subject we assume that we should also follow the exception to that doctrine which that court has announced. In that event we should hold that of the delinquent taxes involved in this case an unknown portion of them, which are shown by the allegations of the writ to be more than six years past due, are presumed to have been paid and are therefore not available for the intended purpose.

But to us, the practical wisdom and sound common sense of the opinion of Mr. Justice WOLVERTON in *Municipal Security Company v. Baker County*, supra, from which we quoted in our former opinion, seems to be more in accord with the spirit and intent of the constitutional limitation.

■ Our attention is called to certain statutes recently enacted which it is claimed have some bearing on the question. Among these is Ch. 321, Laws of Oregon,

1937, which is an act authorizing counties to borrow money upon their tax anticipation notes for the purpose of meeting current expenses, retiring outstanding warrants, or for any other lawful purpose, in an aggregate amount which shall not exceed at any time 50 per cent of the uncollected taxes upon real and personal property heretofore levied and in process of collection for such county for the tax year in which said notes are issued and for the two years next preceding. Section 4 of the act is substantially to the effect that the notes are payable solely from the tax anticipation note sinking fund, the creation of which is authorized by the terms of the act.

Chapter 51, Oregon Laws 1935 Special Session, authorizes the issuance by incorporated cities and towns of tax anticipation warrants for the purpose of paying bonds and bond interest coupons. It is provided that such warrants shall not exceed in the aggregate the difference between the amount in the funds against which they are drawn and 75 per cent of the amount of unpaid taxes levied and in process of collection for the year in which said warrants are issued and the preceding two years, and, further, that the taxes against which they are drawn "shall be credited to said funds upon collection thereof". In both statutes the creation of a fund out of current and delinquent taxes is provided for. In the former the notes to be issued are not general obligations of the municipality, while in the latter the warrants are authorized only for the purpose of refunding an already existing indebtedness—not to create a new indebtedness.

We are also cited to § 35-1330, Oregon Code Supplement 1935, which authorizes the board of directors of a school district to contract indebtedness in the

operation of the schools by the issue of warrants or contracting short term loans to the extent of all taxes levied and remaining uncollected.

These statutes shed little, if any, light on the present question. The briefs of counsel do not specifically inform us what effect should be given them here. If they are to be taken as a legislative declaration that delinquent taxes have value, that fact may readily be conceded. Only the 1937 act affects counties, and, if that act is to be regarded as in some fashion a practical interpretation of the meaning of the constitutional limitation on the creation of debt, it is far from sustaining the petitioners' position—both because under the terms of the act the aggregate amount of the warrants authorized may be only 50 per cent of the uncollected taxes and because the warrants are not to become general obligations of the county but are payable only out of the sinking fund. This is a very different thing from the asserted right to issue warrants as general obligations of the county, limited in amount only by the amount of all delinquent taxes outstanding. The legislature, in adopting the statute, would seem to have had a clear purpose in mind to stay within the confines of the constitution. If the proposal here were to create a sinking fund out of the collections of delinquent taxes and to limit the obligation of the county on the warrants to such fund, we would have a situation comparable to that provided for by the statute.

Additional authorities on this subject are collected and analyzed in case notes in 35 Mich. Law Review, 676, and 25 Georgetown Law Journal, 1045. Among these is *Ward v. City of Pittsburgh*, 321 Pa. 414, 184 Atl. 240, 105 A. L. R. 682. The Pennsylvania constitution limits the amount which a municipality may bor-

row, without a vote of the electors, to two per cent of the assessed value of its taxable property. At the first session of the legislature, after the adoption of the constitution, an act was passed which defined the word indebtedness as including ''all and all manner of debt, as well floating as funded, of the said municipality; and the net amount of such indebtedness shall be ascertained by deducting from the gross amount thereof the moneys in the treasury, all outstanding solvent debts, and all revenues applicable within one year to the payment of the same.'' Under this statute, which previously had been held constitutional, the court decided that where the proof affirmatively showed that two-thirds of all delinquent taxes of the City of Pittsburgh would be promptly collected they could be used as an asset deductible in computing borrowing power. The case is not authority here. We have no such statute, and there is no showing as to the probability of the prompt collection of $144,800 of delinquent taxes of the county for the years in question. Existing legislation in this state, as pointed out in our previous opinion, tends to encourage a leisurely liquidation of delinquent tax indebtedness.

We reiterate what was said in our former opinion, that ''we have no intention in this case of announcing a departure from past decisions''. The scope of the decision is limited by the question made by the facts stated in the alternative writ and admitted by the demurrer, and our holding is, that where a county proposes to incur an expenditure for an extraordinary purpose, such as that of building a courthouse, it may not treat delinquent taxes as an asset in the treasury for the purpose of determining whether or not it will thereby create a debt or liability in excess of $5,000

and so evade the limitation expressed in Article XI, § 10, of the State Constitution. To this we may add that this is certainly true where there is no showing that such delinquent taxes will be promptly collected. Nothing heretofore said by this court as to the use of current taxes as assets is affected, and we leave for future consideration other aspects of the subject as they may be presented.

■ We are fully aware of the public importance of this decision. Whether it will have the disastrous consequences upon municipal corporations in their ability to function properly, pictured by counsel, we have no means of knowing. If so, the remedy must be sought at the hands of the people, who, thus far, have deemed it wise to limit the borrowing powers of counties.

The petition for rehearing is denied.